## DEGRAFFENREID v. THOMAS.

1. Declarations of persons in possession of property, can only be given in evidence, as a part of the *res gestae*, or in respect of their interest in the subject matter.

2. When the competency of a fact as evidence, depends upon the existence of another fact, the court must determine it before permitting the testimony to be introduced, and cannot permit the evidence to go to the jury, and devolve on them the duty of ascertaining the existence of the fact authorizing its introduction, at the same time the merits of the case is submitted to them. Whether, when the preliminary question presents an intricate state of facts, its determination may not be first left to the jury, *Quere.*

3. The practice of admitting all the evidence adduced, and then instructing the jury as to its effect, pointing out, and distinguishing, the legal, from the illegal, is irregular.

4. If a gift of slaves, from a father, to his son, is perfect when made, or becomes so subsequently, the fact that the slaves were placed under the control of the overseer of the father, for a year, is of two equivocal import, to operate against the gift.

5. When the donor, donee, and claimant, reside under the same roof, and derive their means of subsistence from the cultivation of the same soil, the fact that the donor controlled the labor of the slaves of the donee, cannot prejudice the right of the donee, if the gift was valid.

Error to the Circuit Court of Benton. Before the Hon. G. W. Stone.

THE plaintiff in error sued out execution on a judgment against Athanasius Thomas and William Thomas, which was levied on a slave named Jenny, and her two children, to which, Mary Thomas, the defendant in error, interposed a claim under the statute.

Upon the trial, as appears from a bill of exceptions, it was in proof, that the claimant was the daughter of Athanasius Thomas ; that some thirty-five years since, the mother of Jenny, the slave levied on, belonged to Athanasius Thomas, who, when his son James was an infant, and before the birth of Jenny, made a verbal gift of the mother of Jenny, to his

84

son James; that James, and the claimant, continued to reside in the family, with their father, until 1844, and the slaves were employed in the service of the family. It was proved, that in 1840, James Thomas sold the slave Jenny to the claimant.

In 1843, the family moved together from the State of South-Carolina, to Benton county, bringing Jenny, and her children with them, who were worked that year on the land of the father, and that during a part of the year, James Thomas supervised, and directed the labor of the slaves. The plaintiff offered to prove the declarations of James Thomas, while he was thus controlling, and directing the slaves, that he was acting as the overseer of his father, which the court refused to permit, and he excepted.

The court permitted the claimant, against the objections of the plaintiff, to prove the declarations of James Thomas, and his father confirming the ownership of Jenny, made before the sale from James to the claimant. The court also permitted the claimant to prove her own declarations, and those of her father, made after the sale to claimant, and before the levy of the execution, and the plaintiff excepted.

The court instructed the jury, that declarations of persons in possession of property, made in reference to such possession, and the character in which they held the same, were admissible in evidence—that an oral gift of personal property, to be effectual, must be accompanied by a delivery of the thing given. That when several persons lived together, and there was property in the family, and a doubt arose as to who had the possession, it was the duty of the jury to ascertain from the proof, who had the right to the property, and that the right to the property in such case drew to it the possession. That under these rules, they must ascertain who had the possession, at the different periods of the history of the property, and consider as in evidence before them, only such of the declarations, and admissions of the father, or his son and daughter, as they should find made by persons, in posses-

sion of the property. The plaintiff excepted, and assigns all the matters of law arising out of the bill of exceptions, as error.

A. J. WALKER, for plaintiff in error.

The declarations of James Thomas made, while controling and in possession of the property levied on in 1843, which plaintiff offered in evidence, were merely explanatory of his possession, and declaratory of the right in which he held it. and were therefore competent evidence. Gary v. Terrell, 9 Ala. Rep. 206 ; Berry, use, &c. v. Hardman, 12 ib. 604; McBride and wife v. Thompson, 8 ib. 650 ; Abney v. Kingsland, 10 ib. 355. The respective declarations of A. Thomas and James Thomas were improperly admitted, because they do not appear to have been made when the makers of them were in possession—and because they do not appear to have come within the rule laid down in the above cited cases. They cannot, by the favorable intendment of this court, be considered admissible, because the general rule is, that declarations (except of parties) against their interest, are incompetent evidence, and the claimant should have shewn such a state of facts as would take the testimony out of the general rule. Abney v. Kingsland, 10 Ala. Rep. 355; Smith v. Armistead's ex'rs, 7 ib. 698. The court could not, after admitting illegal testimony, and its having more or less effect upon the jury, avoid the objection, by qualifying it. McCurry v. Hooper, 12 Ala. Rep. 823.

S. F. RICE, contra. It is firmly settled by the decisions of this court, that an error in the admission of evidence may be cured by a proper charge, or by subsequent instruction not to regard it ; and this has been allowed and sustained in a grave criminal case. Givens v. The State, 5 Ala. Rep. 747.

2. But the conduct of the circuit judge is clearly defensible upon another well settled and wholesome principle. It is the following : In every preliminary inquiry, preceding the admission of testimony, it is the right of the judge to decide ; but where the admissibility of the testimony " depends upon

the decision of intricate questions of fact, the judge may, in his discretion, take the opinion of the jury upon them." The circuit judge, in this case, only exercised " his discretion," in taking " the opinion of the jury," upon " intricate questions of fact." If ever there was a case where, this discretion of the judge may be exercised, this is one of those cases. 1 Greenl. on Ev. § 425, and cases there cited, sec. 49 ; 7 Wend. 56 ; 3 Phil. Ev. 1501.

3. The decisions of this and other courts upon kindred and analogous questions—of discretion of courts in certain cases—are referred to in Kennedy v. Kennedy, 2 Ala. Rep. 625 , 6 ib. 443.

COLLIER, C. J.—Conceding that James Thomas, during part of the year 1844, was employed as the overseer of his father, the defendant in execution, and in that character " supervised and directed the labor of the slaves in question," and it is difficult to perceive what effect such employment could have had upon the rights of the claimant. If the gift from the defendant to his son James was perfect when made, or became operative by something subsequently occurring, the fact that the slaves were placed under the control of the donor's overseer for a year, is of too equivocal import to predicate a conclusion in favor of the plaintiff in execution. The donor, the donee, and claimant, resided under the same roof, and derived their means of subsistence from the cultivation of the same soil. Under these circumstances, if the purchase of the claimant was effectual to invest her with a title to the slaves, the fact that her father controlled their labor with her consent, could not prejudice.

But if the declarations of James Thomas are admissible, it must be upon the hypothesis that they are part of the *res gestae*, viz., the circumstances under which he "supervised and directed the labor of the slaves," and not the character of his possession ; for it is not pretended that he was then in possession of them. These declarations refer alone to his father or himself, and cannot affect the claimant—if the fact

they disclose was material or admissible, it should have been elicited by an examination of the witness, as his possession, under the circumstances, cannot be regarded as the *res gestae.*

The declarations of the defendant in execution and his son, before the sale of the latter to claimant, in respect "to the ownership of the slave Jenny," could only be admissible upon the ground of a continuing possession in the declarant when the declaration was made ; and not even then, to every conceivable extent. In McBride and wife, et al. v. Thompson, 8 Ala. 650, we said, " the affirmation of the party in possession, that he held in his own right, or under another, is proper evidence as part of the *res gestae,* which *res gestae* is his continuous possession ; but his declarations beyond this, are no part of the *subject matter,* or *thing done,* and cannot be received as such. While it is allowable to prove statements of one in possession, and explanatory thereof, it is not permissible to prove every thing that may have been said by him in respect to the title ; as that it was acquired *bona fide,* and for a valuable consideration ; was paid for by the money of a third person, or his own, &c. This, instead of being part of the *res gestae,* would be something beyond, and independent of it." Declarations, although not admissible upon this principle, are sometimes received on the ground that they were against the interest of the party when made.

It is fairly inferable from the bill of exceptions, that the declarations of the father and son were admitted irrespective of the consideration of *res gestae,* or their interest in the *subject matter.* This conclusion is strengthened by the charge to the jury, which was obviously intended to enable them to discriminate between legal and illegal testimony, and so to scan it as to do justice to the parties. Upon this hypothesis, the circuit court opened the door too wide in the admission of the declarations, and the error was not repaired by the charge to the jury. It is the office of the judge to pass upon the admissibility of evidence, and he cannot devolve it upon the jury, whose duty it is to consider its sufficiency. If the competency of one fact depends upon the existence of another,

Degraffenreid v. Thomas.

the court must determine whether the predicate is well laid, and admit or reject the evidence, according as this may or may not be.

It is said by an eminent legal compiler, that "the question of interest, though involving facts, is still a preliminary question, preceding in its nature the admission of the testimony to the jury. · It is therefore to be *determined by the court alone*, it being the province of the judge, and not of the jury, in the first instance to pass upon its sufficiency." If, however, the question of fact in any preliminary inquiry is decided by the judge, and the same question afterwards recurs in the course of the trial upon the merits, the jury may, if they are satisfied upon the evidence, find the verdict the other way. "In determining the question of interest," says the same learned author, "where the evidence is derived *aliunde*, and it depends upon the decision of intricate questions of fact, the judge may in his *discretion* take the opinion of the jury upon them." 1 Greenl. Ev. § 425. To sustain this latter remark, the 8th ed. of Phillips on Evidence, by A. & P., p. 2, and note 1, is alone cited.

The learned annotators upon Phillips cite quite a number of cases, and say, "these cases, with many others, hold that it is for the court alone to try and determine the question of competency, both as to the law and the fact, wherein it comes in place of a jury; and a jury trial will not be granted where there is a fair conflict of evidence, even though the court find against a slight preponderance. The rule here does not apply, that the court shall decide the law, and the jury find the facts. And above all, error does not lie for a finding one way or the other upon the facts. After the court has determined the question, it is not proper to submit it to the jury. Though it is said that where the point depends on the decision of an intricate question of fact, judges occasionally, in practice, take the preliminary opinion of the jury." For this last observation, A. & P.'s ed. of Phillips is alone cited, and instead of affirming such a practice to be within the *discretion* of the court, it is said to be *occasionally* exercised. See 3 Phil. Ev. C. & H.'s Notes, 1501.

If, indeed, the practice referred to be permissible, it certainly cannot be regular to refer to the jury the decision of the preliminary fact, at the same time that they are required to consider the case upon its merits, and respond to the issue; but the jury should first pass upon the preliminary question, and then hear the evidence on the merits. We are however inclined to question the propriety of the practice, and cannot very well see how the court could vindicate its decision, if it should adopt a verdict as its basis which was unsupported by the facts. It will not do to say that a reference to the jury is only permissible where the facts are *intricate and involved;* for the judge.would of necessity determine their character, and his conclusion being the result of *discretion*, could not be controlled.

The reference of the preliminary question and the consideration of the merits, to the jury at the same time, would perplex and embarrass their inquiries—greatly increase the probability of their being misled, and unless the jury was one of more than ordinary discrimination, they would hardly be competent to the task of considering the facts in their different phases, applying them, and understandingly responding to the issue. In this view, we should think it altogether safer to follow the *antiqua via*, and let the court primarily decide upon the admissibility of evidence, and the jury consider its credibility, and the facts established by it. Such a course has the sanction of the most commanding precedent, and will much oftener be the means of doing justice, than the innovation we are called on to recognize. Ross v. Gould, 5 Greenl. Ev. 204; Harris v. Wilson, 7 Wend. Rep. 57.

The declarations of the claimant, if adverse to her interest, especially if subsequent to her purchase, were evidence against her. But the admissions of the defendant in execution must be determined by a reference to the superiority of his title, or his possession, and the extent to which they went as connected with the latter. Smith v. Armstead's Ex'rs, 7 Ala. Rep. 698; Gary v. Terrell, 9 Ala. Rep. 206; Abney v. Kingsland & Co. 10 Ala. Rep. 355; Berry, use, &c. v. Hardman, 12 Ala. Rep. 604.

The practice of admitting all the evidence adduced, without respect to its character, and then instructing the jury specially as to its effect—pointing out and distinguishing the legal from the illegal testimony, is altogether irregular, and must often be productive of embarrassment and injury in the administration of justice. Although such irregularity may not always warrant the reversal of a judgment, it must be a fatal error, where the illegal evidence is not withdrawn, or the jury are not explicitly instructed to disregard it.

In the case at bar, the court did not withdraw any portion of the testimony from the jury, or charge them that it was inadmissible, and should not be considered by them; but merely laid down certain rules by which they should determine its legal effect and influence—thus avoiding a decision upon the admissibility of the evidence, and devolving that task upon the jury, which should have been performed by the judge. It thus results, from what has been said, the circuit court erred—its judgment is consequently reversed, and the cause remanded.