THOMAS vs. DEGRAFFENREID.

1. Where a witness has been so situated as to render it probable, that, if a fact, notorious and ostensible in its character, ever existed, he would have known it, his entire want of knowledge on the subject, though weak, is admissible evidence.
2. It being shown, on a trial of the right of property in certain slaves, that the defendant in execution is the father of the claimant, that they lived together and that the slaves were employed in cultivating the land on which they resided, the contemporaneous declaration of the defendant, that he claimed to own the land in his own right, is not irrelevant, but is admissible, as conducing to show that the slaves were in his possession.

3. Before the declarations of a party can be received in evidence in his own favor, as explanatory of his possession, the fact of possession must be established to the satisfaction of the court; otherwise, the declarations would be made evidence of the possession itself, or the title, rather than as explanatory of the nature of the possession.

4. A claimant on the trial of the right of property is not permitted to prove title in a third person, with whom, at the time the evidence is offered, he has neither shown, nor proposed to show any privity.

5. Where, in a trial of the right of property, the plaintiff proves possession in the defendant, the declarations of the latter, contemporaneous with and explanatory of such possession, are admissible evidence for the claimant.

6. In a trial of the right of property, proof, that one, through whom the claimant has shown or proposes to show he derives title, some years before the rendition of the plaintiff's judgment, asserted a claim to the property in the presence of the defendant in execution, and that he did not dispute it, is proper to be left to the consideration of the jury.

7. Delivery is essential to the validity of a parol gift of personal property.

8. Whether or not there has been a delivery of a chattel is not a conclusion of law, but a question of fact to be determined by the jury.

9. The court cannot pass upon the effect of the testimony, when the question to be determined is whether or not an act was done with a fraudulent intent.

10. The law is settled in this State, that a gift as against subsisting creditors is absolutely void, but as against subsequent creditors, it must be shown to have been made with a fraudulent intent.

Error to the Circuit Court of Benton. Tried before the Hon. John J. Woodward.

This was a trial of the right of property in a slave named Jenny, and her two children, which had been levied on under an execution in favor of the defendant in error against Athanasius Thomas and William Thomas and claimed by Mary Thomas, the plaintiff in error. The claimant relied for title on a parol gift of the mother of Jenny by Athanasius Thomas, before the birth of Jenny, to James Thomas, his son, and a purchase from him by the claimant. On the trial it was shown by the plaintiff in execution that the claimant was the daughter of Athanasius Thomas, one of the defendants in execution, and that Jenny, the woman levied on, was the daughter of a slave by the name of Lucy, of whom Athanasius Thomas held possession for some time previous to the year 1812. The plaintiff in execu-

tion then read in evidence the deposition of one Crosby, a witness residing in the State of South Carolina, who testified that he knew Athanasius Thomas for at least twenty-five years before his removal with his family, of whom the claimant, being an unmarried daughter, was one, from that State to the State of Alabama, in 1843; that he had possession of and took with him from South Carolina the slaves in controversy, and that he had many opportunities of knowing them, Athanasius Thomas being a near neighbor, and his children and the witness having been somewhat raised together, and that the acts of ownership exercised by Athanasius Thomas over the slaves consisted in his controling and directing them in their work. This witness also testified that he could not say " who received the proceeds of their labor; if any one else, but the old man, I never knew or heard of it." · To this portion of the witness' testimony the claimant objected, but the objection was overruled and she thereupon excepted. The same witness further testified, that the claimant lived with her father and that he never knew of any funds that she had acquired, nor did he know how she could have acquired any to purchase negroes; that he never heard of · any purchase of these negroes from James Thomas by the claimant, nor of any swap or transfer from the time he first knew them up to the time they left for Alabama; and that he noticed no alteration or change in the possession or control of them. This testimony was also objected to, but the objection was overruled and the claimant excepted. The same witness testified that James Thomas never, to his knowledge had possession or in any manner controled the woman Lucy, or the slaves in controversy, which testimony was the foundation of another objection and exception on the part of the claimant. Boulware, another witness examined under commission by the plaintiff, after stating that he lived about a half mile from Athanasius Thomas, in South Carolina, and was well acquainted with the family and the slaves, testified that he never heard of Lucy or Jenny being claimed by the claimant, to which the claimant objected, and, upon the objection being overruled, saved the exception. Another witness, testifying first to similar knowledge with the others of the family of Athenasius Thomas and of the slaves, stated that the slaves were employed in South Carolina in farming and that the land which they cul-

tivated Athanasius Thomas "professed to own in his own right." To this testimony the claimant objected, but 'the objection was overruled and she excepted. The succeeding exceptions to the twelfth were founded on the exclusion by the court of testimony relative to the assertion of a claim to the property of James Thomas, and may be sufficiently understood by reference to the opinion. The twelfth exception: The claimant offered to prove the declarations of Athanasius Thomas during the time he had the possession of the slaves, Lucy and Jenny, after 1812 and up to 1834, showing the character of his possession, but the court refused to allow the proof and the claimant excepted. Mrs. Todd, a witness for the claimant, testified that she was well acquainted with the woman Lucy, the mother of Jenny, and that she was given in the year 1812, in South Carolina, to William or James Thomas by Athanasius, and was delivered at the time of the gift in the presence of two witnesses, both of whom are now dead, and that said Lucy was always known afterwards as James Thomas's, and so called by his father, Athanasius Thomas, with whom the said James has lived. There was other proof, and the testimony was conflicting as to whether Athanasius or James Thomas was in possession of the slaves. The claimant as rebutting evidence introduced an exemplification of a statute passed by the Legislature of South Carolina on the 20th December 1832, providing that, "No parol gift of any chattel shall be valid against subsequent creditors, or purchasers, or mortgagees, except when the donee shall live separate and apart from the donor,—and actual possession shall at the time of the gift be delivered to the donee, his or her executors, administrators or assigns."

The court charged the jury—1st, "That there could be no valid gift of personal property by parol without the parting with dominion and possession of the property, and that there must be an actual delivery of the property at the time of the gift, but that the taking the hand of the negro and placing it in the hand of the child would be a delivery to the child and a parting with the dominion over the property, or delivering to another for the child, or setting apart the proceeds of the labor of the slave would be a delivery. 2d, That if there was no other proof in the case showing a gift to James Thomas except the statement of Mrs. Todd in regard to the gift and delivery of the woman

Lucy, that the jury would not be authorised to regard that proof, and to find upon their oaths that there was a gift; that the delivery of the property was a conclusion, and if the witness said there was a delivery of property, without stating the facts that went to make up the conclusion, that the jury would not be authorised to regard such a statement, or to find that there was a gift. 3d, That a man might make a gift of his property with intent to defraud his creditors, whose demands would not exist for fifty years after the gift, and the conveyance would be void as to such creditors when their debts came into existence. 4th, That if the jury believed from the evidence that about 1812, there was a gift, which was imperfect for want of delivery, and afterwards in 1834 Athanasius allowed the negroes to pass into the possession of James, in pursuance of his original intention, the statute, passed in Carolina in the year 1832, would avoid the gift *ab initio*, and destroy the effect of the subsequent delivery." To each of these charges the defendant excepted and asked the court to charge the jury—1st, " That although the jury might believe from the evidence that Athanasius Thomas was indebted at the time of the gift to James Thomas, yet under the proof in this case that fact did not render the gift void. 2d, That one indebted may make a valid gift of personal property, if there is no actual intent to defraud the creditors of the grantor." The court refused to give either of these charges, and the claimant excepted. The several rulings of the court, the charges given, and the refusal to charge as requested are now assigned as error.

WHITE and RICE, for the plaintiff in error.

A. J. WALKER, for the defendant.

CHILTON, J.—Before proceeding to the consideration of the main points in this case, we will briefly notice the exceptions taken to the ruling of the Circuit Court in the admission as well as rejection of several portions of the testimony, and as the bill of exceptions abounds with so many points, we must, for the sake of brevity, classify them as well as we may.

The first, second, third and fourth objections presented in the order in which the bill of exceptions states them, are of a kin-

dred character and may be disposed of together. The object of the plaintiff in execution was to show title in Athanasius Thomas. As circumstances conducing to prove this, he desired to show that the possession, dominion and control of the slaves were retained by him and that he received the benefit of their services and labor. The witness, Crosby, states his intimacy with the family of Athanasius Thomas, having known him for twenty-five years, and that he and the children were partly raised together. If his relation to the family was such as that he would in all probability have known of the existence of a fact ostensible and rotorious in its character, had it existed, his want of all knowledge on the subject may be received as some evidence of its non-existence. This description of evidence is generally considered weak and gives place usually to affirmative testimony, but it is not rejected as improper. For the law as to positive and negative evidence, see 3 Stark. Ev. 516-17. These exceptions are to proof of this negative kind. The witness answers, "I cannot say who received the proceeds of the labor; if any one but the old man, (Athanasius Thomas,) I never knew or heard of it." Also, "that he never knew of any funds which the claimant had acquired, or how she could have acquired any, &c.—never heard of any transfer, &c., nor observed any change in the possession of the slaves, or heard of the present claimant setting up any claim to them." Under the circumstances shown in the record, we are satisfied this proof was not improper, and that the court correctly permitted it to go to the jury for what it was worth.

It is well settled that the declarations of a party in possession, either of real or personal property, explanatory of his possession, constitute a part of the *res gestæ* and may properly be allowed as evidence. In the case before us, the pertinency of the declaration of Athanasius Thomas, that the land he lived on he claimed to own in his own right, to the question of title to the slaves, is not very obvious; but when we take into consideration the fact that the claimant is the daughter of the declarant, that they lived together on the land, and that the slaves in dispute were also engaged as servants about the place, we do not think the claim of ownership of the land is so disconnected with the title to the slaves and their possession as to make it irrelevant. If the slaves labored upon the land of Atha-

nasius Thomas, it was a circumstance, conducing to show that he was the person having them in possession, and having an interest in their labor. This view disposes of the fifth exception.

The court properly excluded that portion of Mrs. Todd's deposition in which she says that James Thomas claimed the mother of one of the slaves in controversy, and that she was then known as his property. It is not shown that he was in the possession of the slave at the time, nor that what was said in regard to her ownership by him was not mere hearsay. We think that before the declarations of a party can be received in evidence as explanatory of his possession, the main fact, the possession, must be shown to the satisfaction of the court; otherwise the declaration would be made evidence of possession, or title, rather than explanatory of the tenure.—See this case in 14 Ala. 681. Besides, the proof at most conduced to establish title in a third person, as between whom and the claimant it was not proposed to show at the time it was offered any connection, so that upon that ground it might well have been rejected, and this is decisive of the remaining exceptions to the testimony, except the twelfth, and as to this we are constrained to hold that the court committed an error. The plaintiff had proved that Athanasius Thomas was in possession of the property. He had examined one witness expressly and directly to this point, and who proved the possession. Indeed the burden of his proof was to satisfy the jury that Athanasius Thomas was the possessor and owner of the slaves, and he seeks to condemn them as his property. It was competent then for the claimant to prove his declarations, explanatory of the possession, which the plaintiff in execution had proved. It was not for the plaintiff in execution to say, I have proved possession and control of the slaves in the defendant in the execution, sufficient to establish his title, but the proof is not so satisfactory as to authorise his contemporaneous declarations explanatory of that possession.

We should further observe, lest our silence might mislead the parties, that, connected with proof that the claimant held under a purchase from James Thomas, the matter of the tenth exception should not have been excluded. It was the declaration of James, made in the presence of Athanasius Thomas, claiming the slaves as his, and which the said A. Thomas did

not dispute. Such claim and assertion of title in the presence of him, who, the plaintiff in execution says, was the true owner, made some twelve years before the plaintiff's judgment was rendered, and his tacit acquiescence, in not gainsaying the claim, is a circumstance, (whether of much or little weight is not for us to say,) which should have been left to the jury, had the claimant rendered it proper by the necessary preliminary proof, or a proposal to make such proof. When this case was here before, it was said, that "the admissions of the defendant in execution must be determined by a reference to the superiority of his title, or his possession, and the extent to which they went as connected with the latter." It was not intended to affirm by this, that if the *plaintiff* in execution proved the possession of the property by Athanasius Thomas, the claimant might not rebut such proof by his contemporaneous declarations, showing the character of that possession.—See cases cited, 14 Ala. 687. Such conclusion, I hold, would be utterly at war with the settled rule of law applicable to such cases.

A few words may dispose of the charges. As a general rule, the validity of a contract is to be decided by the law of the place where it is made. If valid there, it is, says Judge Story, by the general law of nations, *jure gentium*, held valid everywhere, by the tacit or implied consent of the parties.—Story's Conf. Laws, § 242. So, on the other hand, if the contract be void or illegal, by the law of the place where it is made, it will, as a general rule, be held invalid everywhere. This, says the same learned author, would seem to be a principle derived from the very elements of natural justice.—Story's Conf. L. 203, § 243.

The gift in this case, if one was ever made, was made in the State of South Carolina, and by the law of that State, as shown in the bill of exceptions, " no parol gift of any chattel shall be valid against subsequent creditors, or purchasers, or mortgagees, except when the donee shall live separate and apart from the donor, and actual possession shall at the time of the gift be delivered to, remain with, and continue in the donee, his or her executors, administrators, or assigns." This act was passed on the 20th Dec. 1832. Upon the subject of this statute, the Circuit Court charged the jury, that if they believed from the evidence, that about 1812 there was a gift, which was imperfect for want of delivery, and afterwards in 1834, Athanasius allowed

the negroes to pass into the possession of James Thomas, in pursuance of his original intention, the statute above quoted would destroy the gift and effect of the subsequent delivery. Now we think if there was an imperfect gift made in 1812, no delivery having been made, it was equivalent to no gift, but merely to a declaration at most that the party would give at a future day. If the subsequent delivery in 1834 was intended as a gift, in consummation of the donor's previously declared intention, and the donee resided separate from the donor, so as not to make the gift obnoxious to the South Carolina statute, and the subject of the gift remained with the donee from the time the actual possession was delivered to him, we see no reason, provided the gift was not actually fraudulent, why it may not be effectual from the time of delivery, as against subsequent creditors. The statute which we have noticed would operate upon the gift from the time it was made, that is, from the time of the delivery, for until then the gift was not operative, even aside from the statute.—Sewell v. Glidden, 1 Ala. 52; Sims, &c. v. Sims, adm'r, 2 ib. 117; Blakey v. Blakey, 9 ib. 391; Philips v. McGrew, 13 ib. 255; Hunley v. Hunley, 15 ib. 91; Bryant v. Ingram, 16 ib. 117; Jones, adm'r, v. Deyer & Wife, ib. 221. The true question was, dating the gift from the delivery, did it contravene the provisions of the statute—or was it, aside from the statute, made with intent to defraud?

But in charging the jury that if there was no other proof of a gift to James Thomas, except the statement of Mrs. Todd in regard to a gift and delivery of the slave Lucy, that the jury would not be authorised to regard that proof and to find that there was a gift, because, in the opinion of the court, delivery was a legal conclusion and not a fact, was manifestly erroneous. Delivery, or the act of delivering, is a fact. When we speak of it in reference to conveyancing, we mean the transfering of a deed from the grantor to the grantee, and this may be by words, without acts, or by the acts of the parties, without words, or, as is most usually the case, by both. But when we speak of a delivery of specific articles, in connection with contracts, we mean the transmitting the possession of a thing from one person into the power and possession of another.—Bouv. Law Dic. title, Delivery. This is the original and primary meaning of the term, and this is the sense in which, unexplained, we must

understand the witness to have used it.   It may be a conclusion deducible from other facts, but if such was the case, the opposite side could by cross-examination have shown it by requiring the witness to state whether she witnessed an actual transfer of the possession of the property from the donor to the donee, or whether it was symbolical, or by words merely.   It was the province of the jury to determine whether the evidence of Mrs. Todd proved a delivery and consequent consummation of the gift, and the court could not assume the delivery proven by her to be her conclusion from facts, and not an actual delivery. That the circumstances in proof, as detailed by other witnesses, would render it highly probable that this witness was stating her conclusion, does not help the charge; for it in effect takes from the jury the consideration of her testimony and the weight and importance to be attached to it, which particularly belonged to them, and not to the court.—Pistole v. Street, 5 Port. R. 64; Huff v. Cox, 2 Ala. 310 ; Philips v. McGrew, 13 ib. 256.

If the object of the first charge asked, and which the court refused to give, was to obtain the judgment or opinion of the court upon the effect of the testimony, it was clearly improper and therefore rightly rejected.   This, we think, may be considered a fair construction of it.   The question, in the aspect in which we view the charge, is, can the court, when the question raised by the proof is one of fraudulent intent, be called upon to charge the jury upon the effect of the evidence?   This precise point was decided in the case of Costillo & Keho v. Thompson, 9 Ala. 937, where this court held that the court below could not properly pass upon the effect of testimony, when the question to be determined is the fraudulent intent with which the act was done.

In this State the law is settled, that a gift as against subsisting creditors is absolutely void, but that to avoid it as against subsequent creditors, it must be shown to have been made with a fraudulent intent.—See Miller v. Thompson, 3 Port. R. 196; Moore v. Spence, 6 Ala. 506—see, also, the American authorities on this point collated in 1 Amer. Lead. Cases, 51 to 69. These views will sufficiently direct the future disposition of the case.

Let the judgment be reversed and the cause remanded.