# REPORTS

OF

# CASES ARGUED AND DETERMINED

At June Term, 1853.

## NELSON vs. IVERSON.

1. When one party has adduced in evidence a part of a conversation, the other has the right to call for the whole of it.

2. In laying the predicate to impeach a witness, his attention having been directed to a conversation had by him twenty years before, "in the *spring* of the year," person and place being specified, evidence of contradictory statements made by him in *February* of that year, in a conversation otherwise corresponding with that laid, is admissible; the rule only requires that his attention should be directed with *reasonable certainty* to the time, place and person involved in the supposed contradiction.

3. In detinue for a slave, plaintiff claimed under a parol gift from his maternal uncle, and the character of his mother's possession (whether she held as guardian for her infant son, or under a loan as a nurse to herself) was disputed: *Held*, that her declaration, while in possession, that the slave belonged to her brother, was admissible evidence against the plaintiff

4. In such case, evidence that plaintiff's grantor "was in the habit of controlling the slave" while in possession of plaintiff's mother, is also admissible.

6. But evidence that the grantor "usually supplied her (plaintiff's mother) with a nurse, and when one became too large for that purpose, he would take it away and supply another," is not, of itself, admissible.

5 and 8. The declaration of a person while in possession of a slave, " that she was his, and he intended to keep her," is admissible evidence as explanatory of his possession; but a declaration not connected with possession, is not admissible.

7. When the situation of a witness is such, that if a certain fact had existed

2

Nelson v. Iverson.

he would probably have known it, his want of knowledge is some evidence, though slight, that it did not exist; and in such case, he will be allowed to state, that if the fact existed he did not know it.

9. When detinue is brought against a bailee of a slave, his bailor is not a competent witness for him without a release; and the fact that the slave was hired for his victuals and clothes only, does not affect the principle.

10 and 11. Ownership is a fact to which a witness may testify.

12. When a deposition shows on its face that the commissioner by whom it was taken was not very expert in such matters, the court will look to this circumstance in gathering the meaning of the witness from the inapt expressions used

13. The objection that an answer is not responsive to the interrogatory, comes too late at the trial.

14. An infant is *in esse*, for the purpose of taking an estate for its benefit, from the time of conception, provided it be born alive and after such a period of fœtal existence that its continuance in life may be reasonably expected.

Error to the Circuit Court of Macon.

Tried before the Hon. Robert Dougherty.

Detinue by James R. Nelson against William Iverson, for the recovery of two slaves, which plaintiff claimed under a parol gift from his maternal uncle, Garland Dawkins. The principal facts of the case may be found in the previous reports of it in 17 Ala. 222, and 19 *ib*. 95. The additional facts necessary to an understanding of it as now presented, appear in the opinion.

Rice & Morgan, for plaintiff in error:

1. An infant is *in esse*, for the purpose of taking an estate which is for its benefit, from the time of conception, provided it be born alive, and after such a period of fœtal existence that its continuance might be reasonably expected.—Harper *et ux.* v. Archer *et al.*, 4 Sm. & Mar. 99; Morrow v. Scott, 7 Georgia 535; Bishop's Heirs v. Hampton, 11 Ala. 254; 1 Black. Com. (Chitty's Ed. 1848) 130, note 13; 2 *ib.* 169, note 13; 2 Williams on Executors 1284.

2. The delivery of a slave to a third person, as a gift for an infant, is the consummation of the gift: the fact that the infant is in *ventre sa mere*, makes no difference in the principle. The delivery is good, because of the infant's presumed assent, not from any actual assent; and so long as the infancy continues,

the law presumes the infant's continuing assent.—Tate v. Tate, 1 Dev. & Bat. Eq. R. 22, 25. As the evidence in this case showed a delivery to plaintiff's mother, for him, about four months before his birth, it was erroneous to charge the jury that, in order to consummate the gift, under such circumstances, there must have been a delivery after his birth.—Nelson v. Iverson, 19 Ala. 99.

3. The declaration of Garland Dawkins, in relation to a negro woman and four children, not involved in this sui⸱, "that he had sold them for $1,800," was wholly irrelevant and inadmissible.

4. There was error in admitting Mrs. Nelson's declaration, made to Reuben Dawkins in *February*, 1830. Her attention was not called to that time, but to "the *spring* of 1830."

5. It was palpable error to allow the defendant to prove by Reuben Dawkins, "that, whilst Judy was in possession of Martha Nelson, he had frequently heard her say that she belonged to Garland Dawkins." She held possession as guardian or bailee for her infant son; and she thus held possession in Georgia. The record does not show that the statute of limitations of Georgia was in evidence, or relied on by plaintiff. The statute could not possibly have any bearing on the case, as shown in the present record. And as Mrs. Nelson held as guardian or bailee for her infant son, "it is clear that no declaration of hers could be received in evidence to defeat his rights."—Nelson v. Iverson, 19 Ala. 99; Easley v. Dye, 14 Ala. 158.

6. It was erroneous to allow Reuben Dawkins to testify "that Garland Dawkins was in the habit of controlling Judy whilst she was at Mrs. Nelson's." This might have been admissible, if plaintiff had relied on the statute of limitations of Georgia, and Mrs. Nelson's possession in Georgia. But the record does not show this, and the case differs in this respect from the case as presented when it was last here. It is well settled, that acts and declarations of neither the donor nor guardian, subsequent to the consummation of the gift by delivery, can prejudice or impair the donee's title; and therefore it was error to admit evidence that the donor controlled the slave " whilst she was at Mrs. Nelson's," which was after her delivery to her for her infant son.—Powell v. Olds, 9 Ala. 861.

7. Upon the same principle, it was erroneous to allow defendant to prove that, after Garland had re-taken possession of the girl, "he stated that she was his negro, and that he intended to keep her." This declaration was made after the consummation of the gift by delivery, and while plaintiff was still an infant. Even if Garland's possession " between 1830 and 1838" was adverse, and he did make such declarations, plaintiff could not be affected by such adverse possesssion or declarations, because he was an infant until 1844. The suit was brought in 1848, and therefore no question of the statute of limitations or adverse possession could be raised by defendant; and plaintiff did not rely on any such title, but solely on the gift to him, and delivery to his mother for him, in 1823.

8. It was erroneous to allow Mrs. Edge to testify that " Mr. Dawkins usually supplied Mrs. Nelson with a nurse; when one became too large for that purpose, he would take it away and supply another;" also, "If Judy was ever out of his possession, except occasionally as a nurse, it is more than I know." Each portion of this evidence was duly objected to, and should have been excluded.—Olds v. Powell, 7 Ala. 655, 656. A part of this evidence was an attempt to prove what was Garland Dawkins' intention, and this is against law.—Whetstone v. Bank, 9 Ala. 875, 886.

9. Inasmuch as the court allowed the defendant to prove Mrs. Nelson's declarations, to the effect that Garland Dawkins had not given Judy to plaintiff, plaintiff ought to have been allowed to prove her counter declarations, as given in Mrs. Edge's answer to the sixth cross interrogatory. Illegal evidence may be rebutted by illegal evidence. But if her declarations were legal evidence for defendant, why are they not legal evidence for plaintiff?

10. Phebe Webb was an incompetent witness for the defendant below. She was the widow of the donor, and the bailor of the defendant, who is her son-in-law. A recovery against a bailee, the bailor having notice of the suit, is evidence against the bailor.—Hare v. Fuller, 7 Ala. 718; Barney v. Dewey, 13 Johns. 224; 9 Bacon's Abr. 457.

11. A witness ought not to be permitted to testify that a third person "owned" a slave, nor that he himself "owned" him.

Nelson v. Iverson.

12. The testimony of Mrs. Lawless, to which plaintiff objected, refers to a period of time anterior to the gift to plaintiff, and it was therefore irrelevant. It was also erroneous to allow her to swear that Judy was loaned to Mrs. Nelson "as a nurse"; this was allowing her to swear as to Garland's intention.— Whetstone v. Bank, 9 Ala. 875, 886.

13. Those portions of the testimony of Davenport and wife, to which objection was taken, are obnoxious to all the objections made to the testimony of Mrs. Lawless, and to two additional objections : they were not responsive to the interrogatories, and they were not matters within the knowledge of the witnesses; their own deposition shows that they swore to these matters "because he (Garland Dawkins) told us so."

GEORGE W. GUNN, *contra :*

The material question in the case is presented by the charge of the court. The language used does not indicate a present intention or positive promise to give, but effectually excludes a present gift. There was no renunciation by the donor : he does not appear to have parted with his dominion over the slave : the *locus penitentiæ* still remained.—2 Ala. 117; Phillips v. McGrew, 13 *ib.* 259; Pearson v. Pearson, 7 Johns. 25; 2 Black. Com. 441, 442; 1 S. & M. 428.

A direct and immediate gift of personalty cannot be made to a person not *in esse.*—Halstead v. Thomas, 3 Strob. 101. To render a parol gift valid, there must be a thing in being, at the time it is made, upon which the gift could act, accompanied with actual delivery, as such gifts have no reference to the future, but go into immediate and absolute effect.—1 Ashmead's R. 87 ; 2 Vesey 431 ; 2 Saund. 47 ; Jones v. Dyer and Wife, 16 Ala. 224; Bryant v. Ingram, *ib.* 121; 3 Litt. 280; 2 Ala. 117 ; 1 *ib.* 52. And the possession must accompany the gift. —5 Eng. 211; 5 Gill & J. 461, 449. Neither can there be a reservation or condition to a parol gift, to take effect in future.— 1 Ashm. 88 ; 2 Gratt. 344 ; 1 Edw. 296. To constitute an effectual delivery, the donor must part with the dominion of the thing, in favor of the donee ; a bare intention to give is insufficient.—16 Ala. 121 ; *ib.* 224; 13 *ib.* 255 ; 10 Johns. 293 ; Riley 290.

In all cases of gifts *inter vivos,* there is a *locus penitentiæ,*

until the intention and act are consummated by delivery.—18 Johns. 145; 9 East 49; 1 Madd. 176. And in gifts *causa mortis*, there must also be an actual delivery, which may be made to a third person for the use of the donee, if that person retains the possession until the donor's death.—3 Shep. 429; 16 Vermont 206; 1 Murph. 127; 1 Nott & McCord 237; 10 Conn. 480; 2 Wheat. 17; 2 Ala. 669; 20 Verm. 595. If, then, there was only an imperfect gift in 1823, and no delivery afterwards, the title to the slave was not divested out of the supposed donor.—Thomas v. DeGraffenreid, 17 Ala. 610; 9 *ib*. 391; 15 *ib*. 91; 7 Leigh 317; 2 Iredell 361.

The declarations of the alleged donor were admissible evidence.—Harper's R. 374; 1 Bailey 119; 12 Johns. 188; 1 Stew. & P. 56; 9 Ala. 206; 17 *ib*. 207.

The declarations of Mrs. Nelson were likewise admissible.— 17 Ala. 207; 14 *ib*. 681.

When a witness' relations to a family are such that he would, in all probability, have known of the existence of a fact, ostensible and notorious in its character, his want of all knowledge on the subject may be received as some evidence of its non-existence.—17 Ala. 607; 3 Stark. Ev. 516.

Phebe Webb was not an incompetent witness. She had no such interest as would disqualify her.—1 Phil. Ev. 51; 2 Watts & Serg. 190: 9 Dana 43; 8 Shep. 450; 2 McLean 422; 4 Shep. 117; 9 Ala. 869; 3 Kelly 277; 8 Barr 442; 8 B. Mon. 435; Story on Bailments § 105; 4 Denio 515; 13 Ala. 821; 8 Blackf. 45.

CHILTON, C. J.—1. The plaintiff having offered evidence of what Garland Dawkins said to Reuben Dawkins, in regard to the division of the estate of his father, the defendant was allowed, against the plaintiff's objection, to prove that in the same conversation he stated, that the four negro slaves belonging to it had been sold for $1,800 by him. This evidence tended to throw light upon the value of the estate in the hands of Garland, and if any portion of the conversation was relevant, we think the whole of it, had at the same time and relating to the same subject-matter, was competent proof; otherwise, the truth might be suppressed, or perverted by garbled statements, which the law does not allow. If it was irrelevant, it was

rebutting irrelevant testimony of the plaintiff, and consequently he cannot complain.

2. As a predicate for impeaching the testimony of Mrs. Martha Nelson, the defendant's counsel propounded to her the following interrogatory: " Did you not, in a certain conversation with Reuben Dawkins, at his house, in the spring of 1830, speaking of Garland's promise to give Judy to plaintiff, say that Garland Dawkins had promised to give Judy to a boy, if you had one, but that he had not done so ; or did you not say that he, Garland, spoke only in jest when he made the promise, and that you knew it at the time, or something to that purport, and what? And did you not, in a similar conversation, at the house of your mother, in the spring of 1830, make the same statement ?" To this interrogatory the witness answered that she did not. The defendant was then allowed to prove by Reuben Dawkins, that Mrs. Nelson, in a conversation had with him, in *February*, 1830, at his house, said that Garland Dawkins had promised to give Judy to a boy, if she had one, but that he had not done so, and that he was jesting. This proof was objected to.

It is insisted by the counsel for the plaintiff, that the inquiry in the predicate was confined to the *spring* of 1830, and the proof to show the contradiction dates the declarations as in *February* of that year; hence he concludes that the evidence proves no contradiction. The rule requires that the attention of the witness, who is attempted to be discredited, should be called to the time, place and person involved in the supposed contradiction, in order that the faculties of the mind may be put in motion, and the memory aided by the train of ideas which such circumstances would be likely to suggest with reference to the subject-matter of inquiry.—4 Phil. Ev. 761.

The rule, however, is satisfied, when the attention of the witness is called with reasonable certainty to the subject of the previous declarations. The precise words need not be repeated, and in many cases the precise time could not well be stated ; and yet the witness might be as fully guarded against imposition as if the *exact* language and time had been given. Giving to the rule a practical, common sense interpretation, we do not entertain a doubt that it has been substantially complied with in the case before us. The declaration, the person to whom, and

the place at which it was made, are particularly given, and they are stated to have been made in the spring of 1830; whereas the contradicting witness says, the conversation took place in February—it may have been the day before the spring set in. Now it is most improbable that Mrs. Nelson, in reference to a conversation which occurred some twenty years before, should have answered under the apprehension that the particular season in which it was said to have occurred, was an essential element in the inquiry. To suppose that, with a recollection of the conversation, she was shielding herself under the *letter* of the inquiry as to time, disregarding the other concurrent circumstances of place, person and subject matter, all which pointed her to the true answer, would tend more strongly to discredit her testimony than the proven contradiction; for, as to the latter, she may have forgotten, or the discrediting witness himself may be mistaken, while under the former hypothesis, her testimony would amount to an artful evasion of the true answer. We think the proof was properly admitted.

3. The fact as to whether Mrs. Nelson held the girl Judy, who is the mother of the slaves sued for, as natural guardian or trustee for the plaintiff, then an infant, or on a loan as a nurse, from her brother, Garland Dawkins, was disputed, and her declaration while in possession of the girl, that the slave belonged to Garland, was competent, as constituting part of the *res gestæ*, being connected with and explanatory of her possession. If she held as guardian or trustee, then, as was previously decided in this case, it is clear her declarations would not be evidence against her ward or *cestui que trust*, and no question of adverse possession would arise.

4. It was objected to the proof, that Garland Dawkins was in the habit of controlling the slave while in Mrs. Nelson's possession. This tended to show that he had not disposed of her, and was competent.

5. The proof that while Garland was in possession of the girl, between the year 1830 and 1838, (the period of his death,) he stated that he was the owner of her and intended to keep her, was legitimate, upon the same principle that Mrs. Nelson's declarations were received, namely, as explanatory of his possession, and showing that he held in his own right, and not in right of another.

6. The proof made by Mrs. Edge, " that Mr. Dawkins usually supplied Mrs. Nelson with a nurse, and when one would become too large for that purpose, he would take it away and supply another," was improperly admitted, as it has no connection with the girl Judy. That he sent other negroes as a nurse, does not prove that this one was so sent.

7. It appears that Mrs. Edge was on terms of intimacy with the parties, Garland Dawkins and his sister, Mrs. Nelson; that she lived in a quarter of a mile of the former, and a mile and a quarter of the latter ; and she was allowed to say, " If Garland Dawkins was ever out of possession of the girl Judy, except occasionally as a nurse, it is more than I know." This was objected to by the plaintiff, but the objection was overruled.

Our opinion is, that although the proof is of a negative character, yet, under the circumstances, it was legal. The relation of the witness to the family of Dawkins and Mrs. Nelson, was such, that had the property and possession of the girl Judy been transferred to the latter, she would probably have known it, and the fact that she did not know it, although weak, is nevertheless some evidence tending to show that it did not exist.—17 Ala. 602.

8. Mrs. Edge was asked by the plaintiff, on cross examination, whether she had not heard Mrs. Nelson say, that the girl Judy was given by Dawkins to James R. Nelson, and whether, at the time of the conversation, Mrs. Nelson had the possession of the girl. The witness, answering the question, says, she heard Mrs. Nelson say, about sixteen years ago, that Garland had given Judy to James R. Nelson, but she does not state that Mrs. Nelson then had the slave in her possession. As the declaration was not connected with the possession, it is well settled that it was not properly admissible as evidence, and the court properly excluded it.

9. Phebe Webb was examined by the defendant, but an objection was duly made, on the part of the plaintiff, to her competency, on the ground of interest. It appears that she had hired the slaves to the defendant to work for their victuals and clothes, and while he thus possessed them, this action was commenced. She was examined to prove her title, to legalize his possession ; and, as in the contract of hiring there is an implied warranty that the thing hired belongs to the hirer, she

would, upon a failure of title in a suit against her bailee, having due notice thereof, be liable over to him for the damages he should have to pay by way of hire. That he gave the negroes only their victuals and clothes for the hire, does not affect the principle. This, though small, was a valuable consideration, and entitles the defendant to occupy the relation of a purchaser of the slaves for the term for which they were hired. We would observe, that this is such interest as the defendant may release, after which he may re-examine the witness.

10. Said witness stated that her first husband possessed, owned and controlled said slave ever since she was acquainted with her. The plaintiff moved to reject the word "owned" from the deposition, but the court refused to do so. We see no valid ground of objection to the proof. Ownership is a fact, and if the witness knew it, we know of no rule of law which forbids her deposing to it.

11. The same may be said with respect to that portion of the deposition of Mrs. Webb, in which she states, "After the death of Mr. Dawkins, I became owner, and I owned said negroes until I sold Judy to Mr. Thomas, in Alabama." This proof certainly has a material bearing upon the issue, which is the title to the slaves; and if the plaintiff had conceded the witness' competency to testify, it was neither "illegal, irrelevant, nor improper," as stated in the objection to it.

12. John Davenport and his wife, Elizabeth, were examined on interrogatories and cross interrogatories propounded by the parties. They deposed that they were acquainted with the slave Judy sometime about 1818 or 1820, and that she was in Garland Dawkins' possession when they first and last knew her, "only to loan as before stated." In answer to a previous interrogatory, they had stated that Garland had told them he had loaned the girl to his sister, Mrs. Nelson, as an act of kindness, as he was willing to assist her; but this latter answer was excluded by the court. They further stated that they knew the girl in possession of Mrs. Nelson, "for she was sent there as a loan, to nurse"; and in answer to the concluding interrogatory, requiring them to state every fact and circumstance tending to show that Garland never gave the slave to the plaintiff, they reply, "because he (the said Garland Dawkins) told us so."

Nelson v. Iverson.

The plaintiff moved the court to exclude from their testimony above stated, the words, "only to loan her, as we before stated"; this the court refused. Plaintiff also moved to strike out the clause, "for she was sent there as a loan, to nurse"; which motion was denied.

The commissioner who took this deposition evidently was not very expert in such matters, as the same is very inartificially written down and expressed, and some regard must be had to this consideration, since, by subjecting such depositions to very rigid rules of criticism, the ends of justice would very often be defeated. We must gather the meaning of the witnesses as well as we may, from the inapt expressions often used by the commissioners to express it. It was supposed, by the counsel, that the answer to the last general interrogatory is so connected with the answers to the fourth and fifth, as to render the latter but hearsay; but we do not think this a fair construction of it. These witnesses lived for seventeen years near neighbors to the parties, and it would not be improbable that they should have had personal knowledge of the facts to which they deposed. At all events, we do not feel warranted in so construing the last answer as to make it relate back to the previous answers, and render them but hearsay. To exclude them, the plaintiff should have examined as to the witnesses' means of knowledge, and not have left the matter doubtful; for, in case of doubt, it were better that the jury should have the proof than that it should be excluded.

13. As to the objection to that portion of Davenport's answer to the first cross interrogatory, which says, "the girl Judy went backwards and forwards from Garland Dawkins to Mrs. Nelson, and from Mrs. N. to Dawkins," we need only say that the objection, being based upon the ground that it is not responsive to the question, comes too late upon the trial. It should have been made earlier;—but it was not tenable upon the merits; for the question inquires for the length of time the girl was in Mrs. Nelson's possession, and when she was taken back into Dawkins' possession.

14. After setting out all the proof, and some additional exceptions to it, which we do not deem of sufficient moment to require a special notice, the bill of exceptions states that the court charged the jury, "that, if they believed from the evi-

dence that the declarations of the alleged donor to his sister, constituting the alleged gift, were, if she would have a boy child he would give it a negro, that this amounted only to an intention to give upon the birth of a boy child, and taken separately would not amount to a gift; and that in order to consummate a gift, under such circumstances, a delivery should have been made after the birth of the child."

There was proof tending to show that Garland Dawkins, some few months before the birth of the plaintiff, delivered the mother of the slaves sued for to Mrs. Nelson, the mother of the plaintiff, for him; that is, as we understand Mrs. Nelson's proof, the gift was made, and the property was delivered to her to belong to her child, with which she was then pregnant, should it be a boy.

It seems now to be the settled law, that an infant is *in esse* from the time of its conception, for the purpose of taking any estate for its benefit, provided it be afterwards born alive, and after such a period of fœtal existence that its continuance in life might be reasonably expected.—Harper *et ux.* v. Archer, 4 Sm. & M. 109, and cases there cited. Such being the rule of law, if an actual delivery of the slave was made to the mother while she was pregnant with the plaintiff, as a consummated gift to her child in the event it should be a boy, this would vest in him an inchoate right, which would become perfected at his birth, without any further or other delivery. The mother would hold in trust for him.

It is not our province to decide whether the facts proved show that a gift was perfected before the plaintiff's birth. This is a matter for the jury, as the evidence is conflicting. It is sufficient that there was some evidence tending to show that fact, and this was virtually withdrawn from the jury by the charge, which assumed that, although there may have been a delivery in June, before the plaintiff's birth in October, 1823, yet such delivery for him could not render the gift perfect, as in the opinion of the court it required a delivery *after* his birth in order to consummate the gift. In this the judge mistook the law, and for this and the other noticed errors, the cause must be remanded.

Judgment reversed, and cause remanded.