1818.

Negro Hannah
vs
Sparkes

debtor, and that therefore it was strictly correct to carry on the execution for the use of the surety to its full completion.

The present is not a new question; the same point was determined on full consideration, in the case of *Norwood vs. Norwood,* 2 *harr. & Johns.* 238.

JUDGMENT AFFIRMED.

JUNE (E. S.)

NEGRO HANNAH and CHILDREN VS SPARKES.

J J, being the owner of a female slave named H, and his daughter and her husband th n living in his family, and having an infant daughter named *Anna,* then in the cradle, which *H,* then a girl of seven years of age, was rocking, calling *H* to him, and putting his hand on her, said that he requested the persons then present to take notice that he then gave *H* to *Anna,* and declared that *H,* and her posterity, should be the property of *Anna—Held.* that this parol gift was sufficient in law to transfer the property in *H* to *Anna.*

APPEAL from *Queen-Anne's* County Court. This was a petition for freedom, filed by the appellants. At the trial the petitioners read in evidence the will of *Charles Barniclow,* dated the 26th of December 1811, containing amongst other devises and bequests, the following, viz. "*Seventhly.* My will is, that my negro woman *Hannah,* and her child *Elijah,* shall be free after my death." They then proved that the testator had been in possession of negro *Hannah* for upwards of 20 years before his death, and that after his death *Hannah,* and *Elijah* her son, who was then born, acted as free people, until they were taken possession of by the defendant, (now appellee;) and that the other petitioners, her children, were born whilst *Hannah* was so at large. The defendant then proved by *N. Ireland,* a competent witness, that in the year 1786 the said testator, *Barniclow,* intermarried with his (the witness's) sister *Eleonora;* that in January 1787 they had a child named *Anna,* now the wife of the defendant; that *Barniclow* and his wife lived in the family of *J. Ireland,* the father of the witness, where he the witness also resided; that in March 1787 the child of *Barniclow* and wife being in the cradle, and the witness, one *E. Downing,* and *Barniclow* and wife, being in the room, then and usually occupied by *Barniclow* and wife, his father *J. Ireland,* and his mother, and one *P. Trew,* came into the room; that *Hannah,* then a girl, was rocking the cradle, and that *J. Ireland* called her up and put his hand on her, and requested the witness, *Trew* and *Downing,* to take notice that he then gave *Hannah* to *Anna* the child of *Barniclow* and wife; that he declared at the time that *Hannah,* and her posterity, should be the property of *Anna,* except the first child which she might have, which child, if it lived, should be the property of his daughter *A Ireland.* That *Hannah* was then about seven years of age. That immediately after this ceremony, *Hannah* returned to rocking the cradle. That from that time *Hannah* continued to sleep in the room of *Barniclow* and wife, and to attend to the child, which was also done by another girl about the house. That *Hannah,* when called on, performed services for any of the family, when not engaged in the service of *Barniclow* and wife, and nursing the

child. That *Barniclow* and wife, together with their daughter *Anna*, removed from *J. Ireland's* about August or September of the same year, and took *Hannah* with them, who continued in their use and possession for many years thereafter, and that *Anna* lived with her parents until she was two years of age, and then went to live with her grand mother, *Hannah* continuing to live with *Barniclow* and wife. That after the death of Mrs. *Barniclow*, the grand-mother and child went to live with *Barniclow*, and continued to reside with him for one year, when they removed, leaving *Hannah* still in the possession of *Barniclow*. The defendant then proved by *W. Holding*, that in the year 1792, *J. Ireland* was at *Barniclow's* house on a visit, that the witness, and one *Allen*, were called into the house, and that *Ireland* then said he had given *Hannah* to his grand daughter *Anna* before, and to make the thing firm, as they were young, said, now take notice *Holding*, if any claim should come against *Barniclow*, that *Hannah* is not *Barniclow's* property, but the property of his daughter, striking the witness on the back with a whip, and saying, now take notice you remember this in a coming day. The petitioners then proved by *Mary Chairs*, that about 26 years ago her husband, *J. Starl*, now dead, called on *J. Ireland* for payment of a debt, that *Ireland* said he had not the money, and did not know that he ever should have it; that *Starl* told him he had no right to give away his property to *Barniclow*, when he owed money to his creditors; that *Ireland* replied he had not done so; that he had let *Barniclow* have *Hannah* for a debt he owed him. The defendant then proved by *N. Ireland*, that *Barniclow* in 1809 came to his house on his way to a camp meeting, and told him he intended to manumit *Hannah* and her children, to which the witness replied she is none of yours, and you cannot do it; that *Barniclow* then flew in a violent passion, and said he would do as he pleased for he had raised the negroes. The witness said, that he the witness never did claim those negroes as his own. The defendant proved by another witness that *Barniclow*, some years ago, on being asked why he did not sell one of his negroes, to raise money to pay the sheriff who was then present, and who had a demand against him, replied that the negroes were none of his, but belonged to his daughter. He also proved by another witness, that *Barniclow*, before the marriage of his daughter, said that *Hannah* was not his property, but the property of his daughter. The petitioners then proved, that the petitioner *Hannah* remained in the possession of *Barniclow* until his death, and that his daughter *Anna* had not lived with him for 15 years before his death. That she intermarried with *P. Potts* in 1807, who died in 1811, when she intermarried with the defendant in 1813. That the petitioners were at large acting as free persons from the death of *Barniclow* until March 1816, when they were taken possession of by the defendant. The parties, in the exami-

nation of the witnesses, did not enter generally into the declarations of *J. Ireland* and *Barniclow*, but confined them to the particular periods mentioned by the witnesses. The petitioners then prayed the court to direct the jury, that if they believed *N. Ireland's* testimony to be true, that the gift as proved by him, was not sufficient in law to transfer the property to the defendant's wife. This direction the Court, [*Earle*, Ch. J.] refused to give. The petitioners excepted; and the verdict and judgment being against them, they appealed to this court,

The cause was argued before Buchanan, Johnson, Martin and Dorsey, J. by

*Carmichael*, for the Appellants, and by
*Chambers* and *Harrison*, for the Appellee.

JUDGMENT AFFIRMED.

June, (E. S.)                    Patrick vs. Ridgaway.

The plaintiff in an action of *assumpsit*, having a count in his declaration for sundry matters properly chargeable in an account, which account he filed with his declaration, and there being a judgment by default against the defendant for want of a plea—on executing an inquiry at bar he offered the declaration and account as evidence to charge the defendant, contending that the judgment by default was an admission of the account. The county court decided that the articles themselves, charged in the account, were admitted by the judgment by default, but that the value of the articles, and the amount of the items must be proved by evidence. On appeal by the *defendant*, reversed,

Appeal from *Queen Anne's* County Court. This was an action of *assumpsit*. The declaration contained a count for sundry matters properly chargeable in an account, as by a particular account thereof brought into court would appear; a count for money lent and advanced, one for money paid, laid out and expended; and one on an *insimul computassent*. The account referred to in the first count was filed with the declaration. The defendant, (now appellant,) although ruled to plead did not answer the declaration, and a judgment by default was entered against him, and an inquiry at bar ordered at the next term, &c. At the execution of the inquiry at bar the plaintiff, (the appellee,) offered the declaration and account filed as evidence, to charge the defendant, stating to the jury that the judgment by default was an admission of the account. The defendant then prayed the court's opinion to the jury, that by the operation and effect of the judgment by default, the account filed was not admitted. But the Court, [*Earle*, Ch. J. and *Purnell*, A. J.] refused to give the direction, being of opinion that the articles themselves, charged in the account, were admitted by the judgment by default, but that the value of the articles, and the amount of the items, must be proved by evidence on the part of the plaintiff. The defendant excepted; and the inquisition and judgment thereon being against him, he appealed to this court.

The cause was argued before Buchanan, Johnson, Martin, and Dorsey, J.

*Carmichael*, for the Appellant, referred to *Reve vs. Cropley*, 1 *Vent.* 347. *Green vs. Hearne*, 3 *T. R.* 301.