GEORGE YOUNG, Adm'r, &c. *vs.* HENRY YOUNG, Guardian, &c.

Possession of property by the father after a gift made of it to a child who lived with him, will be considered in law, the possession of the donee.

It will be presumed that the father intended to make a complete and valid gift of the property, from the fact that he caused his children to assemble for that purpose. *Held,* that in such a case actual delivery, in the absence of evidence to the contrary, will be presumed to have been made to the minor.

In error from the circuit court of La Fayette county; Hon. Hugh R. Miller, judge.

This was an action instituted in the circuit court of La Fayette county by Henry Young, guardian of Marcus D. Young, a minor, against George Young, administrator of the estate of John Young, deceased, to recover a certain negro and his hire for a certain time. It was in evidence, that in the year 1842, John Young, then a citizen of the State of Alabama, expressed a determination to divide his negro property among his children, and fixed on a day not far distant when he desired his children to attend at his house for the purpose of receiving the negroes he intended to give them. His children all attended but George; and at that time John Young gave the negro boy named Jack to his son Marcus D. Young, who was at that time a minor, and lived with his father, John Young, and that said negro boy Jack is now worth eight hundred dollars; and it was in further proof, that one of the witnesses, (Williams,) who is a son-in-law, received a negro as a distributee from John Young, at that time worth about five hundred dollars, and that George Young, who was not present at the time, had given him a negro child worth about one hundred dollars; and those present who had negroes given them took them away; except Marcus D. and Newel C. Young, who were minors and lived with their father at the time, their negroes were not taken away, but were only pointed out to them as given to them by their father, John Young, and that witness (Williams) got a deed of gift to the negro given him; that witness lived in Alabama some time after this transaction took place, and the

negro boy Jack all that time remained under the control and lived with John Young, and he did not know that any one ever controlled the negro boy but John Young; that he (Young) moved to Mississippi in 1846, and brought said negro boy with him, and he had the management and possession and control of said boy Jack up to his, John Young's, death, which was in 1849, and witness never knew that any one else controlled or had the management of said boy Jack after his (John Young's) removal to Mississippi; and that all that time Marcus Young lived with his father, except a short time he was absent from home, which was his father's house, in learning a trade.

William Berry, another witness, testified, that he had hired said boy Jack from John Young, in the year 1847, and he paid said hire to John Young in part, and a part of it he paid to Henry Young, the plaintiff.

Joseph B. Daniels testified, that he knows the parties to this suit; that he lived in Alabama in the years 1847 and 1848; and he heard John Young say during those years, in conversations he had with him, that he, John Young, had given the negro boy Jack, and Patsey, a girl, to his two sons, Marcus D. and Newell C. Young, his two children, and that he, John Young, had gone to Livingston, Alabama, to have the deed of gift made and recorded, and the reason he did not do so, was, he would have to become guardian for them, and give security, and as he would not go security for any one, he would not have any one become security for him, and this was the reason he did not make a deed. John Young gave to his children as they married or left him, a negro or negroes; he thinks he gave off negroes to his children that had married or arrived at age in the year 1842; that he had given off all his negroes but these negroes to his other children; and given Patsey and Jack to Marcus D. and Newell C. Young, but witness does not recollect which he gave to Marcus, and which to Newell; he heard John Young say he had given all his children their negroes except Allen, and he had given him lands, and that he had given Jack and Patsey to Marcus and Newell, and the reason why he had not made a deed to them, was, that he would have to become

guardian and give security. John Young left Alabama in 1847; as long as John Young lived in Alabama, he kept possession and control of the two negroes; he hired out said negroes in 1846, and received the proceeds of the hire, but he said they were Marcus D. and Newell C. Young's negroes; John Young received part of his support from the hire of the negroes, and witness never knew Marcus D. or Newell C. Young to control said negroes; that said negroes remained with John Young as long as he lived.

Two other witnesses corroborated the above state of facts. The counsel for defendant asked the court to give the following charges to the jury, which were refused.

1st. " If John Young always kept the possession, managed and controlled the negro, and enjoyed the use and benefit of his labor, his declarations that he had given him to plaintiff will not entitle him to recover, although plaintiff resided with said John Young, and was his son under the age of twenty-one years."

2d. " A father is the natural guardian of the person of his child under the age of twenty-one, but as such guardian he is not entitled to the charge and management of the property of his child, and possession of the father in such a case is not by construction the possession of the child."

The court below gave the following charge to the jury, at the request of plaintiff's counsel, which, at the time, was excepted to by defendant's counsel:

" That a gift may be good and valid without any actual change of the possession of the property. As where a father, who is the natural guardian of his children, and when the relationship of guardian and ward exists, the property of the ward in the possession and control of the guardian, and who acknowledges it to be the property of the ward, may be considered as the possession of the child or ward, and the possession of the guardian is the possession of the ward."

The jury found for the plaintiff, when the defendant made a motion for a new trial, which was refused by the court below, and a writ of error was prayed for by defendant below to this court.

Young *v.* Young.

*J. F. Cushman,* for appellant.

The court below erred in refusing to give the fourth and fifth charges asked for, by plaintiff in error, to the jury. This court will not require any authorities to show that the father, as natural guardian of his child, cannot take the management and control of the separate property of his child, without taking out letters of guardianship like other guardians. There is no plainer principle of law than this.

In England, Justice Abbott has said, and all the authorities go to establish the principle, "that by the common law, in order to transfer property by gift, there must be an actual delivery, or a deed or instrument to show the thing done." *Irons* v. *Smallpiece,* 2 Barn. & Ald. 552; *Bunn* v. *Markham,* 7 Taunt. (2 Eng. Com. Law R. 81.)

It has been decided, in almost every. State in the Union, that there cannot be a valid gift at common law, where the donor retains control and dominion over the subject of the gift during life, as was the case with the gift attempted to be set up by the defendant in error. 13 Ala. R. 214; *Anderson* v. *Baker,* 1 Kelly's R. 595; 1 Ala. R. 50; *Adams* v. *Hayes,* 2 Ired. R. 361; *Harten* v. *Gibson,* 4 Desau. 42; *Carpenter* v. *Dodge,* 20 Verm. R. 595; *Phillips* v. *Collins,* 7 S. & M. 428.

In addition to the above point, which has several times been decided in the State of Alabama, where it is alleged this supposed gift was made, the same court says, "that where a gift has been evidenced by a deed which is not produced, but an attempt is made to prove the gift by parol evidence, the withholding of the deed of conveyance casts suspicion over the whole transaction." *Blakey* v. *Blakey,* 9 Ala. R. 391.

There is no statute law in the State of Alabama, where this gift is alleged to have been made, regulating the mode of gifts, consequently the common law is in force there, and all such acts are regulated by the common law principles and the current of decisions, which are certainly with the plaintiff in error. It is in proof that John Young hired the negro boy to several persons after the time when the gift is alleged to have been made from him to Marcus. D. Young, and that he (John Young) received the hire for the negro, and hired him out in his own

name; and that the boy remained in the possession and under the control of John Young for years after the gift is attempted to be set up, even up to his death. Certainly the negro would have been liable for the debts of John Young during his lifetime, and it is equally clear, that if the above principle be true, the boy is assets, in the hands of his administrator, to pay off his debts. What more conclusive proof, then, is wanting, to convince any reasonable man, that the gift was never perfected, whatever may have been his intention at one time; nothing but the fact that John Young intended to make a deed of gift to Marcus D. Young, and have it recorded, but upon reflection he refused and failed to do so; showing must conclusively that he never perfected that which he at one time had only in ·contemplation. For it is in proof he did make a deed of gift of ·the negroes given at the same time to his other children.

A mere intention, or naked promise to give, without some act to pass the property, is not a gift in law; for there exists the "*locus penitentiæ*," as long as the gift is incomplete and left imperfect in the mode of executing it, as in this case, where the alleged donor himself acknowledged that something more was necessary to be done to make the gift perfect; the execution of the deed he at one time intended to make, but upon reflection, for good reasons, refused to make. *Antrobus* v. *Smith*, 12 Ves. 39; *Hooper* v. *Goodwin*, 1 Stew. R. 485; 1 Stew. & Porter, 56.

There certainly must be as good reasons to permit the administrator to control the negro boy as the property of John Young after his death, as there would be to suffer his creditors to take him while living. The judgment of the court below ought to be reversed.

*Howry* and *Hayes*, for appellee.

The law, as charged by the court below, is not opposed to the familiar principle, that the father, as guardian by nature or nurture of his children, is entitled only to the custody of the person of his child, and not to the possession and control of his property.

But it illustrates this principle, that the actual possession of

property by A., who acknowledges it to be the property of B., may be considered as the constructive possession of B., dependent on all the facts and circumstances of the case, to be determined by the jury. Even where the parties are strangers to each other, A. can hold possession for B., and why not when the relationship of father and child exists.

It was held, in the case of *Sewall* v. *Glidden*, 1 Ala. 52, that "where the donee of personal property was under age of twenty-one years, and lived with his father, the donor, the possession of the donor of the gift, is consistent with the donee's rights, and is not even presumptive evidence of fraud;" and, therefore, where the gift is perfect, the donee's possession is subject to explanation.

This fourth charge, asked by appellant, could not have been given by the court, without entrenching on the peculiar province of the jury to determine the facts of the case. It asks the court to determine what credit "the declarations of John Young," that he had given the slaves to plaintiffs, "are entitled to, the weight of such testimony, and effect thereof. If John Young always kept the possession of the negroes, and enjoyed the benefit of their labor." In such case, the declarations of John Young are to be considered of no avail in entitling his sons to relief, no matter how tortious and wrongful may have been John Young's possession of the slaves, subsequent to a perfect actual delivery, or the enjoyment of their labor, or whether such possession, by said Young, and use of said slaves, was with the consent or request of his children. A good and perfect gift may be shown by the declarations of the donor. *Caldwell* v. *Wilson*, 2 Spears, 75.

The fact that a slave given by a parent to a child remains with the donor and at his residence, may be explained by the circumstance, that the residence of the donor was the residence of the donee. *Sims* v. *Sims*, 8 Porter, 449; *Brunson* v. *Brunson*, 1 Mis. 643. Declarations of a donor are evidence of gift. 10 Johns. 293. "All the declarations of the donor refer to and recognize a gift as having been made; they afford reasonable ground for a jury to infer, that all the formality necessary to make it a valid gift, had been complied with."

It is admitted by plaintiff in error, that John Young in his lifetime, did give to his two sons, Marcus and Newell Young, the slaves in controversy.   But he insists that this gift was imperfect and void for want of delivery to the donees of the subject of the gift.

To constitute a valid gift, there must be a delivery.   This point is decided in the case of *Marshall* v. *Fulgham*, 4 How. 220. The only point settled by that case.   In the case of *Curradine* v. *Collins*, 7 S. & M. 432 ; it was also decided, that no gift was valid without a delivery of the article, or some act equivalent to a delivery.   A gift of chattels is valid without delivery ; " actual delivery is not necessary, it may be constructive or symbolical.   Delivery is a question of fact for the jury to determine."   The case of *Grangias* v. *Arden*, 10 Johns. 293, is referred to as a good example of constructive delivery.

It has been held, that the declarations of the father's wife, in his absence, at the time the daughter took possession, that she did not give, but only lent her the slave, did not change the gift into a loan, though the possession was obtained from the wife, without complaining of the qualifications of the gift.   *Martrick* v. *Linfield*, 21 Pick. 325.

In the case from 1 Mis., just referred to, Brunson placed in the hands of J. A. Brunson several securities for money, with directions for him to collect them and pay himself for the trouble, retain one third, and divide the balance between Robert and Ashbell Brunson.   *Held*, that it was a good gift to Robert and Ashbell.

In the case from 10 Johns. 296, which we have cited, the subject of the gift was a lottery ticket by a father to his infant daughter.   The evidence of delivery of the subject of the gift, was, that the father purchased a lottery ticket, which he brought home and said was for his daughter ; he wrote the daughter's name on the back of the ticket, and put it in his desk ; the child was not present at the time.   After the prize was drawn, the father's declarations were, that the prize money was not his but his daughter's.   " As held by the court in the case of *Carradine* v. *Collins*, 7 S. & M. 432, here was no proof of an actual

delivery of the lottery ticket," but is a case of good construc-
tive delivery.

The jury may infer a delivery of the property from facts and
circumstances, and the preponderance of the evidence is greatly
in favor of the delivery.

It has been repeatedly decided, that a new trial will not be
granted, even where the verdict is against evidence, unless the
preponderance of evidence be great. See *Gibson* v. *Gibson,*
9 Yerger, 329; *Dickson* v. *Parker,* 3 How. 219; *Harris* v. *Hal-
laday,* 4 Ib. 338; *Kellogg* v. *Budlony,* 7 Ib. 340; *Leflore* v. *Jus-
tice,* 1 S. & M. 381; *Ellzey* v. *Stone,* 5 Ib. 21.

If any of the charges given were erroneous, or any improperly
refused, justice has been done in the cause, and it is likely a
different result would not ensue on another trial. Under such
circumstances a new trial will not be granted. *Hill* v. *Calvin,*
4 How. 231; *Perry* v. *Clark,* 5 Ib. 495.

*H. A. Barr,* for appellant, in reply.

Delivery in case of a gift must be according to the nature of
the thing. " It must be an actual delivery so far as the subject
is capable of delivery." ' " It must be *secundum subjectam mate-
riam,* and be the true and effectual way of obtaining the com-
mand and dominion of the subject." " If the thing be not capa-
ble of actual delivery, there must be some act equivalent to it."
" The donor must part not only with the possession, but with
the dominion of the property." 2 Kent, 439.

It is believed that every respectable authority goes to the
extent, that there must be an abandonment of the dominion of
the property by the donor. *Pennington* v. *Gittings,* 2 Gill &
Johns. R. 208; *Ewing* v. *Ewing,* 2 Leigh, R. 337; *Sims* v. *Sims,*
2 Ala. R. 117; *Noble* v. *Smith,* 2 Johns. R. 52. In *Marshall* v.
*Fulgham,* 4 How. 221, the point is settled by this court.

In the case of *Grangiac* v. *Arden,* 10 Johns. R. 302, there
were acts done which amounted to an abandonment of the
dominion over the subject of the gift. The name of the
daughter was written on the back of the ticket, and the prize
money was placed in trade for her. If the money was put in

trade for her, it was not for himself.   There was, therefore, an abandonment of dominion over it by the donor.

The court below refused to charge the jury, that a father, as natural guardian of his child, is not entitled to the charge and management of the property of such child, and that possession by the father in such case is not by construction the possession of the child; but in effect charged, that the father is the natural guardian, and that possession by the father is by construction the possession of the child.   This was manifest error.   The father is by nature the guardian of his child; but this guardian-ship extends only to the custody of the person of the child.   As natural guardian, the father has no more to do with the pro-perty of the child than the man in the moon.   He is an entire stranger to it.   2 Kent, 219; *Hyde* v. *Stone*, 7 Wend. R. 354. It never was held by any court upon the face of the earth, that the father, as natural guardian, had any thing to do with, or any connection whatever with, the property of the child.   How, then, or upon what principle, can the possession of the father, who is only natural guardian, be by construction the possession of the child?

The effect and result of the doctrine contained in the charge of the court is this, — that although delivery is essential to the validity of a gift, yet, when the gift is from a father to a child under age, delivery is not necessary.   The second charge of defendant in error is calculated to mislead the jury.   The other charge asked by defendant below, and refused by the court, is but an enunciation of the principle laid down in the case of *Marshall* v. *Fulgham*, 4 How. R. 221, and it was error to re-fuse it.

Mr. Justice Fisher delivered the opinion of the court.

This was an action in the circuit court of La Fayette county, by Henry S. Young, as guardian of Marcus D. Young, against George Young, as administrator of John Young, de-ceased, to recover a certain slave, and hire for a certain time. The plaintiff below obtained a verdict and judgment; where-upon the defendant made a motion for a new trial, which was

overruled, when a bill of exceptions was taken, embodying the evidence.

The proof is, that John Young, the intestate, and father of Marcus D. Young, in the year 1842, called his children together and gave to each of them certain slaves; those children who were of full age took the slaves thus given into possession. The slave now in controversy was at the same time given to the ward, who was then an infant and living with his father. It is urged, that there was no actual delivery of the slave, and the gift was therefore void. There is no direct proof on this subject; but there was sufficient to authorize the finding of the jury, that a delivery was in fact made. We must suppose that the father actually intended to make a complete and valid gift, from the fact that he had caused his children to assemble for that purpose; and an actual delivery, in the absence of evidence to the contrary, will be presumed to have been made to the minor. The possession of the father after the gift, was in law the possession of the donee who lived with him. This point is too well settled to require authority.

Judgment affirmed.