## IVEY'S ADM'R *vs.* OWENS AND WIFE.

[ASSUMPSIT TO RECOVER PROCEEDS OF SALE OF SLAVE, CONVERSION BEING WAIVED.]

1. *Parol gift—Delivery and retention of possession.*—Although an actual delivery is indispensable to perfect a parol gift of a slave, yet it is not necessary that the actual possession should be afterwards retained by the donee: subsequent possession by the donor is not necessarily incompatible with the donee's dominion over the property, nor is it conclusive evidence that there was no delivery, or that the dominion did not pass to the donee.

2. *Donor's subsequent possession explained.*—Although the donor's subsequent possession, when the donee is twenty-one years of age, is not necessarily explained

by the single fact that his home is also the home of the donee; yet where the donee is the daughter of the donor, and lives with him as a member of his family, and the slave is too young to be a source of profit or active service, or to be permanently separated from a family of slaves belonging to the donor,—these facts, *prima facie*, are a sufficient explanation of the donor's subsequent possession and control of the slave, although the donee is over twenty-one years of age.

3. *What constitutes delivery.*—If a parent places the hand of a slave in the hand of his daughter, declaring at the time that he gives the slave to her, and this is done with the intention thereby to create and consummate a parol gift, the dominion over the slave passes to the donee, and the gift is complete.

4. *Charge legally correct and applicable to evidence sustained.*—A party cannot complain of a charge, which, when construed in reference to the evidence, asserts a correct legal proposition: if he desired any explanation of it, he should have asked additional instructions.

5. *Statute of limitations.*—Where a party has the right to bring either trover for the conversion of his slave, or assumpsit for the proceeds of sale, and elects to proceed in the latter action, the statute of limitations begins to run from the time that cause of action accrued, and the fact that the other remedy is barred does not defeat the action.

APPEAL from the Circuit Court of Lowndes.
Tried before the Hon. C. W. RAPIER.

THIS action was brought by Lorenzo D. Owens and Nancy, his wife, against William H. Chambliss, as the administrator of William Ivey, deceased, to recover $900, the alleged price of a slave named Jinney, who was hired by plaintiffs to said Ivey, and sold by him while in his possession under the contract, on the 1st January, 1853; and the complaint also contained the common counts for money loaned, money had and received, and money paid and expended. The defendant pleaded, 1st, "that he does not owe the money," 2d, "the statute of limitations of three years," and, 3d, "the statute of limitations of six years."

" On the trial," as the bill of exceptions states, "the plaintiffs showed title to the slave Jinney, by virtue of an alleged gift from defendant's testator, who was the father of the plaintiff Nancy, to her. The proof showed that said Nancy, who was then of lawful age and unmarried, lived with her father in 1841, and previous thereto, and continued to live with him until 1846 or '47. The plaintiffs' testimony conduced to show that, in 1841, '42, or '43, the defendant's testator called up his daughter Nancy and the slave Jinney, who

was then a small negro, placed the hand of Jinney in the hand
of said Nancy, and stated that he gave the negro to his daugh-
ter, to pay her for the long services which she had rendered
to him and his family after she had come of age, and called
upon the witness to witness that he then delivered the negro
to his daughter as her own property. It was in evidence, by,
the testimony of one of the witnesses, that in all the con-
versations the witness ever had with the defendant's testator,
after the transaction, in relation to the girl, he said that she
belonged to his daughter Nancy. It was further in evidence,
by the testimony of another witness, that on one occasion,
subsequent to 1843, when some one called on defendant's
testator, and proposed to purchase said slave, said testator
stated, that he could not sell her, because she belonged to his
daughter Nancy, and refused to sell her; further, that when
Nancy was about leaving for Louisiana, to reside with her
brother-in-law, one Aldridge, she called upon her father for
the slave; that her father objected to her taking the slave at
that time, for the reason that she was too young to be taken
off and parted from the family, but stated that, if she would
let the negro remain, he would send her the next fall, and
that in the meantime, if the slave's services were worth any-
thing, he would pay her hire. It was further in evidence,
that defendant's testator afterwards, in 1852, sent money, say
$20 at one time, to his daughter Nancy, in reply to a letter.
from her; but there was no further evidence, tending to show
that this money was sent as payment for hire. The proof
further conduced to show, that the slave continued in the pos-
session of the defendant's testator, until February, 1853, when
he sold her for $800.

"On this proof, the court charged the jury, that if the
plaintiff Nancy lived with her father, the defendant's testa-
tor, and he called up the slave Jinney, and placed her hand in
the hand of said Nancy, and made use of the language, 'that
he gave the negro to his daughter, to pay her for the long
services which she had rendered to him and his family after
she had come of age'; and if the jury further find that it was
the intention of said testator, by this act and the accompany-
ing declaration, to give the said slave to the said plaintiff,—
that this, in law, amounts to a delivery, and transfers the

dominion over the slave to plaintiff, and constitutes a valid
parol gift, and passes the title to plaintiff, without further
change of possession; to which charge the defendant excepted.
The court also charged the jury, in connection with the above,
that the subsequent possession of the donor might be explained,
by the fact that the home of the donee was also the home of
the donor.

"The proof further conduced to show, that plaintiff Nancy,
in September, 1847, demanded the said slave of the defend-
ant's testator, who refused to give her up; that he worked
and controlled said slave, until January, 1853, when he sold
her; that in March, 1853, said testator died, and on the 23d
April following letters of administration *ad colligendum* were
taken out on his estate by Mrs. Ivey, and on the 13th July
following letters of administration were granted to the pres-
ent defendant. On this evidence, the defendant asked the
court to charge the jury, that if they found from the evidence
that said testator, in September, 1847, denied to plaintiff her
right in said slave, and continued in the possession, direction,
and control of the slave, until January, 1853, and then sold
her as his own; and that said testator died in March, 1853,
and administration was granted on his estate in April follow-
ing,—then the statute of six years barred this action, and
they must find for the defendant. This charge the court
refused to give, and charged in lieu thereof, that it was
necessary, to create the bar of the statute, that defendant's
testator should have held the continuous adverse possession
of the property itself, with open claim of title, for six years
next preceding the suit; and that, if he held the slave for
five years, and then sold her, the statute does not apply. To
the refusal to charge as asked, and to the charge given, the
defendant excepted.

"Pending the trial, the plaintiff offered to read the depo-
sition of Jesse Ivey, of which the 11th direct interrogatory
was as follows : 'Did you ever hear said William Ivey, after
said transaction, make any declarations, at any time, going to
show that he had given said slave to said Nancy? if so, state
what he said, and the different times at which he said it.' The
answer of the witness was as follows : 'In all the conversa-
tions I had with him, after that transaction, in relation to the

girl, he said that she belonged to his daughter Nancy.' The defendant moved to suppress and exclude this answer, but the court overruled the motion; and the defendant excepted."

The rulings of the court on the evidence, the refusal to give the charges asked, and the charges given, are now assigned as error.

WATTS, JUDGE & JACKSON, for the appellant:

1. To constitute a valid parol gift, *inter vivos*, there must be an actual delivery of the thing intended to be given, and an actual parting with dominion over it.—Sewall v. Glidden, 1 Ala. 52; Sims v. Sims, 2 *ib.* 217 ; Durett v. Seawall, 2 *ib.* 669; Blakey's Adm'r v. Blakey's Heirs, 9 *ib.* 391; Phillips v. McGrew, 13 *ib.* 255; Hunley v. Hunley, 15 *ib.* 91; Bryant v. Ingraham, 16 *ib.* 117; Jones v. Dyer and Wife, 16 *ib.* 221.

2. The facts proved, upon which the charge asked as to the statute of limitations was predicated, constituted a complete bar. More than six years from the commencement of the adverse possession, allowing six months from the grant of administration, had elapsed before the commencement of the suit ; and the fact that the testator did not retain the slave six years before his death, claiming adverse title, makes no difference, if the time which had elapsed at his death, added to the period which intervened between his death and the commencement of the action, completed the six years.—Angell on Limitations, (2d ed.) 446; Alexander v. Pendleton, 8 Cranch, 462; Melvin v. Proprietors on Merrimack River, 5 Metcalf, 15.

3. The answer of the witness ought to have been excluded, because not responsive to the interrogatory.

J. F. CLEMENTS, *contra:*

1. Though delivery of possession is essential to perfect a parol gift of personalty, yet there may be an actual delivery without a change of possession ; or, in other words, any act of delivery operates, in law, a change of possession. It is a clear principle of law, as well as of natural justice, that a parent may make a parol gift of property to his daughter, and the fact that she lives with him does not vitiate the gift. To perfect a parol gift, in such case, it is sufficient that it appear

that an actual gift was intended, and that the intention was manifested by some act which may fairly be construed into a delivery. Such intention and act are clearly shown by the facts of this case; and the donor's subsequent retention of possession is sufficiently explained by the facts, that the donee had no other home, and that the slave was too young to be removed. In support of these positions, the following cases are cited : Davis v. Davis, 1 Nott & McCord, 225; Martrick v. Linfield, 21 Pick. 325; Steel v. McKnight, 1 Bay, 64; Young v. Young, 3 Miss. 38; Thomas v. Degraffenreid, 14 Ala. 681; Goodwin v. Morgan, 1 Stew. 278; Sims v. Sims, 8 Porter, 449; Sewall v. Glidden, 1 Ala. 52.

2. As to the statute of limitations : The action is not trover for the conversion of the slave, but assumpsit to recover the proceeds of sale. The statute had not perfected a bar when the slave was sold, and a new and distinct cause of action accrued by the sale. The plaintiffs had the clear right to waive the tort, and sue for the money; and having thus elected to proceed, the defendant cannot allege his own wrong to defeat the action.—Angell on Limitations, 76; Lamb v. Clark, 5 Pick. 193; Ferriss v. Ferriss, 1 Root; Miller v. Miller, 7 Pick. 133; 1 Cond. En. Ch. 297; 13 East, 474; 1 Cowper, 376.

3. The answer was responsive to the interrogatory.

WALKER, J.—Delivery is an indispensable ingredient of a parol gift. When the gift has been perfected, the subject-matter of the gift passes immediately under the dominion of the donee. Hence the inquiry, whether the thing given has passed under the dominion of the donee, is applied as a test of the completion of the gift. There is no delivery without a transfer of the property, from the dominion of the donor, to that of the donee. The subsequent possession of the property by the donor is not necessarily incompatible with the investiture of the donee with the dominion over it. One may have the actual possession, while another may have the dominion which appertains to ownership. While, therefore, there must be an actual delivery to the donee, in order to give dominion over the property, it is not necessary that the actual possession so acquired should afterwards be retained. If a gift has

been consummated by delivery, the mere fact that the donor afterwards exercises actual control of the property will not divest the title transferred by the gift. Nor is the subsequent possession of the donor *conclusive* evidence that there has been no delivery, or that the dominion over the property has not passed to the donee. That circumstance is susceptible of explanation; and the facts, that the donee is the donor's daughter, lives with him, and composes a part of his family, and that the subject of the gift is a slave, too young to be a source of profit or active service, or to be permanently separated from a family of slaves belonging to the donor, would be, *prima facie*, sufficient explanation of the subsequent control and possession of the donor, notwithstanding the donee might be over the age of twenty-one years.—Hannah v. Sparks, 4 H. & J. 310; Degraffenreid v. Thomas, 14 Ala. 681; Easley v. Dye, *ib.* 158; Young v. Young, 25 Miss. 38; Stallings v. Finch, 25 Ala. 518; Sewall v. Glidden, 1 Ala. 52; Sims v. Sims, 8 Porter, 449.

If a father place the hand of a slave in the hand of his daughter, and declare that he gives the slave to the daughter; and if the intention exist, by the declaration and accompanying act, to make a gift, consummated in delivery, the dominion over the slave passes to the donee, and the gift is complete. The mere placing of the slave's hand in that of the donee would not, of itself, amount to a delivery; but, if that act is done with the intention to perfect a gift by delivery, it would have such effect. It is impossible to define in advance with particularity what will constitute a delivery. The question, in every case, must depend upon the nature of the property. " It must be "*secundum subjectam materiam*," and the true and effectual way of obtaining the dominion over the subject.— Smith v. Wiggins, 3 Stew. 221; Smith v. Smith, 2 Strange, 955; Davis and Wife v. Exr's of Davis, 1 Nott & McCord, 955.

In this case, the subject-matter of the gift was a slave, the actual dominion and control of which can be appropriately and effectually transferred by placing the hand of the slave in that of the donee, and accompanying that act with words of gift and conveyance, which not only tend to manifest the intention of the act, but inform the slave to whom his future obedience would be due. There are many conceivable in-

stances in which such an act, with such an accompanying declaration, could not constitute a gift, or evidence a delivery. If a parent, in mere playfulness, or from any other than a motive to really transfer the property, were to go through the ceremonial of a gift to his child, no title would pass. An apprehension is expressed in the case of Reed v. Colcock, 1 Nott & McCord, that transactions in domestic life, never designed to have effect as transfers of property, may, under the law of parol gifts, be converted into conveyances of title. Such a result cannot ensue, if due weight is given to the requisition, that the intention by the act and accompanying declaration to make a gift must appear. It is the intention, characterizing the act and declaration, which must control their effect.—Sims v. Sims, 8 Porter, 449.

The decision in the case of Sims v. Sims, 2 Ala. 117, is not in conflict with the principle laid down in this opinion. In that case, there was no act of delivery whatever by the donor. The slave was not under the dominion of the donee for a single instant. There was not even an intermission in the donor's possession. The *locus penitentiæ* remained to the donor. In the case presented in the charge of the court in this cause, there was what may amount to an actual placing of the property under the dominion of the donee. An act was done, and words were spoken, which, characterized by the appropriate intention, were sufficient to pass the title.

The precise language of one of the charges of the court is, "that the subsequent possession of the donor *might* be explained, by the fact that the home of the donor was also the home of the donee." We are not willing to decide that the subsequent possession of the donor would necessarily be explained by the mere *fact* that the donor and donee had the same home, where the donee is over the age of twenty-one years. We do not understand the charge to assert such a proposition. The language of the charge is, that the possession of the donor "*might be*," not that it would be, explained by that fact. The effect of the charge is, that the particular circumstance *may*, or *may* not, have been explained by that fact, according to the other circumstances in the case. This charge was permissible, when construed in reference to the testimony, that the donee was an unmarried daughter, had

long been engaged in rendering services for the donor and his family, and lived in his family, and that the negro was too young for active or profitable service, or to be separated from the family to which she belonged. The charge asserts a correct proposition of law; and if the defendant desired any explanation of it, he should have asked it.—Dave v. The State, 22 Ala. 35.

It is settled by the decisions of this court, that if one sell the personal property of another, and receive the purchase money, the latter may waive the tort, and sue in assumpsit to recover the purchase money.—Firemen's Insurance Company v. Cochran, 27 Ala. 228; Duncan & Hooper v. Stewart, 25 Ala. 408; Strother v. Butler, 17 Ala. 733; Crow v. Boyd's Adm'r, 17 Ala. 51; Upchurch v. Nosworthy, 15 Ala. 705. The owner of the property may elect, in such a case, to bring trover, or assumpsit. The statute of limitations to the action which he may elect to bring, will commence running from the time when the cause of action accrues. The action of assumpsit, in this case, was not barred because the plaintiffs' other remedy in tort may have been. The authorities in support of that proposition are clear, and rest upon sound reason. See Angell on Limitations, 75, § 5, and authorities cited; and Godsey v. Bason, 8 Iredell's Rep. 264.

There was no error in the refusal of the court to exclude the testimony objected to.

The judgment of the court below is affirmed.