## Adolph Seckel and Albert Seckel v. York National Bank.

1. BILL OF LADING—*Effect of Delivery.*—The delivery of a bill of lading passes as valid and effectual a title to the consignment as could have been passed by the actual delivery of the property consigned.

2. CONSIGNOR AND CONSIGNEE—*Private Arrangements Between— Drafts and Bills of Lading.*—M. consigned a car load of flax to S., a commission merchant, and took from the carrier a bill of lading in the usual form. The next day he drew upon the commission merchant on account of the consignment and sold the draft to a bank, to which he also transferred the bill of lading. The draft, with the bill of lading, was presented to the commission merchant, before the flax had been sold, and they had knowledge it had been pledged by the transfer of the bill of lading to the bank for the amount of the draft. *Held*, that notwithstanding an arrangement to the contrary existing between the merchant and the consignor, they could not take and sell the consignment and repudiate the draft.

3. EVIDENCE—*To Contradict a Witness—Foundation.*—In order to entitle letters to be read in evidence for the purpose of contradicting a witness, the attention of the witness should have been called to the letters in order to have given him an opportunity to explain them.

**Memorandum.**—Assumpsit for money had and received. Appeal from a judgment of the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1894, and affirmed. Opinion filed March 5, 1895.

REED, BROWN & ALLEN, attorneys for appellants.

APPELLEE'S BRIEF, LEROY D. THOMAN, ATTORNEY.

With respect to property in the possession of a carrier for transportation, it is too well settled for argument that the

transfer by the owner of the carrier's receipt, or bill of lading is, in effect, a transfer of the title to, and right of possession of, the property itself. Upon the consignment of goods to a factor for sale, where a third person advances money to the consignor and takes a draft upon the consignee with the bill of lading as security, the legal title to the property and its proceeds is in the payee of the draft until the same is paid. R. R. Co. v. Phillips, 60 Ill. 190; Peters v. Elliott, 78 Ill. 321; Taylor v. Turner, 87 Ill. 296; Hall v. Bank, 133 Ill. 234.

If a consignee takes a consignment with knowledge that a draft has been drawn against it, he can not retain the consignment or its proceeds and repudiate the draft. McCausland v. Bank, 43 Ill. App. 381; Jones on Liens, Sec. 61.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellants were grain commission merchants, in Chicago, and the appellee was a banking corporation doing business at York, Nebraska. One George W. Mitchell was a buyer and shipper of grain at Henderson, Nebraska, and was accustomed to consign his grain to the appellants for sale.

In furtherance of his business, Mitchell, on September 1, 1891, consigned a car load of flax to the appellants, and took from the railroad company, at Henderson, a receipt in the nature of a bill of lading in the usual form, running to himself, whereon, under the caption of "marks and consignee," the appellant's firm name and address were written.

On the next day, September 2d, Mitchell drew a sight draft upon appellants in favor of appellee for $490, and delivered the same, together with the bill of lading, to the appellee, and the appellee then advanced to Mitchell the actual amount of the draft in money. The draft, with the bill of lading attached, was presented to appellants on September 5th, and payment was refused and the draft duly protested. The flax reached the appellants about September 8, 1891, and was sold by them, on that date, for $669.08.

After deducting freight, commissions, and inspection charges, there was left of the proceeds in appellant's hands the sum of $540.49, a sum $50.49 in excess of the amount of the draft. For the amount of the draft this suit was brought and a judgment recovered for the amount thereof with interest.

The facts above set forth are clearly established by the evidence and are not disputed in any material respect, and we do not observe that counsel for appellants claim but that, if there were no other element in the case, the judgment would have been rightful.

It is contended, however, by appellants, that the trial court improperly struck out and excluded evidence offered by them to show that there was an arrangement between Mitchell and the appellants that they would cash Mitchell's drafts only if all the shipments by him to them left margins to apply on his pre-existing indebtedness to them, and that appellee knew of the arrangement; and that under such a state of facts the appellee could occupy no better position against appellants than Mitchell did.

We do not regard appellant's contention as well grounded. Had the offered evidence been admitted it would only have shown that there was a conversation between one of the appellants and Mr. Post, the president of appellee, held in 1889, two years before this shipment in question was made, wherein, as the appellant witness testified, "I told Mr. Post that Mr. Mitchell was indebted to us, and that we had agreed with him that if he consigned his grain against which he drew drafts, to us, and left a credit on each assignment over and above the draft, we were to pay the drafts; otherwise, were not to pay them. That he was indebted to us and had secured us partly by mortgage, and that he had an open book account with us, and that we were going to try to help him get along in business. Post told me that he was also indebted to the bank, and that it was policy to do this."

Mitchell was not present at that conversation. Now, if by any evidence that was offered and excluded, the appellee

might be held to have notice that the same arrangement that was made in 1889, continued to exist between Mitchell and appellants in September, 1891, about which it is unnecessary to express an opinion, it could not be held to operate as a bar upon the appellee from having other and different dealings with Mitchell.

Mitchell was the owner of the grain on September 2, 1891, when he brought the bill of lading to the appellee to raise money with, and had a perfect right to contract concerning it as he might desire. And, acting within that right, he raised money on it from appellee, on the credit offered by the bill of lading, to the extent of the draft that was drawn.

There can be no pretense that the arrangement of 1889 affected the ownership of grain thereafter to be bought and shipped by Mitchell. That arrangement was in express terms limited to appellants' undertaking to pay only such drafts as should be less in amount than the value of the consignment. In other words, that thereafter appellants would not do as, inferentially, they had previously done, to wit, pay drafts for an amount equal to or in excess of the proceeds of the shipment.

In this case the draft that was drawn was less than the net proceeds of the shipment, so that granting that the arrangement of 1889 was in full force, and that the appellee had notice of it when the advance was made, the terms of the arrangement were not violated. But more than that. The drafts were presented to appellants for payment three days before they had sold the flax. They then knew that the flax had been pledged by the transfer of the bill of lading to appellee, for the amount of the draft. They could not thereafter take and sell the consignment and repudiate the draft. McCausland v. Wheeler Savings Bank, 43 Ill. App. 381.

The delivery of the bill of lading passed to the appellee as valid and effectual a title as could have been done by an actual delivery of the flax. M. C. R. R. Co. v. Phillips, 60 Ill. 190; see, also, Lewis v. G. & C. U. R. R. Co., 40 Ill. 281.

It was not error to exclude the letters from Mitchell and Post that were offered in evidence.

The depositions of the writers of those letters were taken by appellee, and they were cross-examined by appellants, and their depositions were read in evidence.

In order to entitle the letters to be offered and read for the purpose of contradicting or impeaching their testimony, their attention should first have been called to the letters at the time their cross-examination by deposition was had by appellants, in order to have given them an opportunity to explain them in such respects as they were regarded as being contradictory of their testimony.   Travelers Preferred Accident Association v. McKinney, 57 Ill. App. 141, and cases cited.

The judgment of the Superior Court will be affirmed.