## Mary D. Lanterman v. Charles N. Travous and Edwin D. Gillespie.

1. BANKS AND BANKING—*Relations With Depositors.*—The ordinary relation between bankers and depositors is that of debtor and creditor; it has nothing of the nature of a trust in it.

2. BANKERS—*Receiving Deposits When Insolvent—Under the Act for the Protection of Depositors—Thirty Days Limit.*—The offense created by the act of June 4, 1879, entitled, "An act for the protection of bank depositors" is complete whenever deposits are received by an insolvent banker. The thirty days limit is a rule of evidence made by the legislature declaring what is *prima facie* evidence of an intent to defraud.

3. SAME—*Intentional Fraud Immaterial.*—The act for the protection of bank depositors (June 4, 1879) renders bankers liable to prosecution for receiving deposits when insolvent, whether they are aware of their insolvency or not.

4. SAME—*General Deposits.*—When a customer makes a deposit in a bank in the ordinary course of business, of a draft or check received or credited as money and indorsed by the customer to the bank "for deposit" to be placed to his credit, the title to the draft or check vests in the bank.

5. SAME—*General Deposits Before and After Insolvency—Preferences.*—When a general deposit is made before formal insolvency, there can be no recovery in preference to other creditors, but when the deposit has been kept separate and not fully received before insolvency, the depositor may recover it.

6. SAME—*Deposits Mixed With Other Funds.*—When a deposit has been mixed with other assets of the bank so as to be incapable of identification it can not be recovered as a special deposit.

**Insolvency Proceedings.** Appeal from the County Court of Madison County; the Hon. W. P. EARLY, Judge, presiding. Heard in this court at the August term, 1897. Affirmed. Opinion filed March 1, 1898.

### STATEMENT OF THE CASE.

Appellees are assignees of J. A. Prickett and Harris E. Prickett, who did business as private bankers under the firm name of J. A. Prickett & Son, at Edwardsville, Illinois. On Monday, December 14, 1896, about 9 o'clock in the morning, Prickett & Son executed a deed of assignment under the State law for the bene-

fit of their creditors. Appellant filed her claim for $2,450 within the time prescribed by the statute and a verified petition, asking that it be made a preferred claim and be paid in full. The court denied the petition, from which judgment this appeal is taken.

The facts in the case are substantially these:

About noon on Friday, December 11, 1896, appellant deposited a check on the Bank of Edwardsville, with the banking firm of J. A. Prickett and son for $2,487.67. She received on it $37.67 in money and credit in the bank for the balance, $2,450. An account was opened with her on the books of the bank of J. A. Prickett & Son and a pass book given her showing this balance to her credit.

On Saturday, December 12, about 4 o'clock in the afternoon, J. D. Gillespie, an employee of J. A. Prickett & Son and acting for them, took this check for $2,487.67 with other checks to the Bank of Edwardsville. An adjustment of checks or clearance was there made between these two banks. The result was a balance of over $1,000 in money, the precise amount not shown by the evidence, coming to the bank of J. A. Prickett & Son. This amount, together with checks taken up against the bank of J. A. Prickett & Son, Gillespie received and delivered to the last named bank. The money thus received became then a part of the assets of the bank, and on the Monday following passed, with the other property of the bank, into the hands of the assignees. There was no regular time for clearing between the two banks, clearance being made whenever the amounts justified.

JOHN G. IRWIN, attorney for appellant.

The act of June 4, 1879, makes it *prima facie* evidence of an intent to defraud for any banker, broker, bank-

ing company or incorporated bank to receive deposits
within thirty days before failure, suspension, or in-
voluntary liquidation.    1 Starr & Curtis's Stat., p. 776.

This statute applies, not only to criminal cases, but
to civil proceedings as well, wherever acts done in con-
travention of its provisions are the subject of judicial
investigation.   It is "An Act for the Protection of
Bank Depositors."    Trust & S. Bank v. Manufac-
turing Co., 150 Ill. 341.

A vendor whose title is derived through theft, tres-
pass, conversion, or other unlawful means, can trans-
mit no title to a vendee. Each successive vendee stands
in no better position with respect to the property
than his vendor.   Every participant in the chain of
transfers is regarded as a *tort feasor*, and may be sued
separately or jointly by the owner.   23  Am. and
Eng. Ency. of Law, p. 711, and notes; Sharp v.
Parks, 48 Ill. 512; Haddix v. Einstman, 14 Ill. App.
446; R. S. 1895, Secs. 239 and 243, Criminal Code.

These cases were decided on general equitable prin-
ciples, and are none of them based on a special statute
similar to the one we invoke.   In the one last cited it
is said the question is exhaustively considered in the
case we cite next, which is spoken of as the "leading
American authority."

So long as trust property can be traced and followed
into other property into which it has been converted,
the latter remains subject to the trust.  If a man mixes
trust funds with his own, the whole will be treated as
the trust property, except so far as he may be able to
distinguish what is his own.   These are established
doctrines of equity, and apply in every case of a fidu-
ciary relation, and to money deposited in bank, and
debts thereby created, as well as to every other descrip-
tion of property.   Nat. Bank v. Life Ins. Co., 104
U. S. 54.

The confusion of trust funds wrongfully diverted, does not destroy the right to follow them. When they are traced into the assets of the unfaithful trustee, or of one who has knowledge of the character of the funds, they become a preferred charge upon the entire assets with which they are mingled, no matter whether such assets consist of money, bills, notes and land, or other assets. The fact that the trust fund goes to swell the volume of the assets, gives the beneficial owner an equitable right to preference. Meyers v. Board of Education, 51 Kan. 87; 37 Am. St. Rep. 263.

Where checks were received on deposit when the bank was hopelessly insolvent, within a few moments before it closed its doors, and were collected afterward by an agent of the bank, the proceeds were declared to be held by the receiver in trust for the depositor, because of the fraud of the bank in receiving the deposit under such circumstances. Wasson v. Hawkins, 59 Fed. Rep. 233. See, also, St. L. & F. R. Co. v. Johnston, 133 U. S. 566.

Where a bank receives paper for collection, in case it mingles the money with its own and becomes insolvent, the trust may be enforced out of money which it turns over to the receiver. The trust holds as against the assets in the hands of the receiver until they are exhausted, and will follow even a balance after it has been reduced below the amount of the trust obligation. Continental Nat. Bank v. Weems, 69 Tex. 489; Hunt v. Townsend, 26 S. W. Rep. 310; Re Johnson, 103 Mich. 109.

If, after collecting paper, the bank becomes insolvent, the owner may claim a trust against the funds which reach the hands of the assignee, although the identical proceeds of the paper never reached his hands, and the funds coming to him are less in amount than the face

of the paper.　First Nat. Bank v. Sanford, 62 Mo·
App. 394.

W. M. Warnock, attorney for appellees; Burroughs
& Bro., of counsel.

The right of the true owner to pursue his property
does not necessarily cease when its identity has been
destroyed, but his means of enforcing that right
must necessarily cease when it has become so mixed
with other property of like kind that he can no longer
trace or identify it.　U. S. v. The Inhabitants of Water-
borough, 2 Ware, 158; Goodell v. Buck, 67 Me. 514;
Englar v. Offutt, 70 Md. 78; Johnson v. Ames, 11
Pick. 173; Ill. T. & S. B. Co. v. Smith, 21 Blatchford,
275; 2 Story's Eq. Jur. 1259, to 2 Pom. Eq. Jur.
Sec. 1058.

The statute being in derogation of common right
should be strictly construed.　A statute which gives to
a particular class of creditors special and exceptional
rights and remedies should not be enlarged by impli-
cation, or by uncertain construction, but should be
given only such force as clearly belongs to it.　To say
that a right claimed under such statute is uncertain, is
substantially tantamount to saying that it does not
exist.　Shaw v. Chicago Sash, Door, Etc., Co., 144 Ill.
530.

Natural justice and equity would seem to require
that a provision which awards to some of the creditors
of an estate a preference over all others, should not be
given any broader interpretation than the words used
by the legislature actually demand.　The legislative
intent to enlarge the number of claims included in a
preferred class should be clear and unambiguous.
Svanoe v. Jurgens, 144 Ill. 515.

It must be remembered that at common law appel-

Lanterman v. Travous et al.

lant stood on an equality with the creditors now resisting her claim for preference. It is a familiar rule of construction that a statute is not to be construed as changing the common law farther than its terms expressly declare. Can. Bank v. McCrea, 106 Ill. 281.

MR. JUSTICE WORTHINGTON DELIVERED THE OPINION OF THE COURT.

When appellant deposited her check for $2,487.67 on Friday, December 11, the legal effect was to transfer that amount in the Bank of Edwardsville to J. A. Prickett & Son. They gave her in exchange for the check $37.67 in money, and credit on their books for the balance, $2,450. On Saturday, December 12, they used the check, in other words collected it with other checks in clearing with the Bank of Edwardsville, receiving in return checks drawn against their bank and a balance in money. This money was mixed with other money of the bank and its identity lost. Appellant in her petition sets up that the money paid on the check "went into the hands of Harris E. Prickett who was then in control of said bank of J. A. Prickett & Son, and had the management thereof." The evidence confirms this statement.

The check was not a special deposit. Counsel for appellant states in his brief: "The law still is that the banker is merely a borrower from his depositor." In American Exchange Bank v. Mining Company, 165 Ill. 114, the court says: "The ordinary relation between bankers and depositors is that of debtor and creditor and has nothing of the nature of a trust in it."

When appellant deposited her check and received $37.67 in money and a pass book with $2,450 credited to her, in legal effect, she loaned that amount to J. A. Prickett & Son, to be paid on call. If the check had

remained uncollected, and had passed into the hands of their assignees, a different question would have been presented, but it did not. It was collected partly in money and partly used in paying checks against the Prickett Bank. In the clearance on Saturday, December 12, it was presented at the Bank of Edwardsville "with other checks." The difference between the sum of this check and the "other checks" then presented, and the checks held by the Bank of Edwardsville against J. A. Prickett & Son represents the balance in cash that Gillespie received and turned over to Prickett & Son. The proceeds of the check were thus merged and mixed with the funds of Prickett & Son on Saturday before the assignment was made on the succeeding Monday.

Counsel for appellant in his argument says:

"Before it (the law of June 4, 1879) was passed, an insolvent banker lawfully might receive deposits. Whatever his moral obligations might have been, he was under no more legal obligation to refrain from receiving deposits than any insolvent was to abstain from borrowing money when he knew that he could not pay it to the lender when due. * * * But under this act, when the condition of insolvency exists, the law imposes the same obligation upon the banker that it imposes upon all trustees and fiduciaries. Appellant's position there is that as the act of June 4, 1879, makes it a crime for a bank to receive deposits when insolvent, that it follows that all deposits so received are fraudulently received, and that therefore no title to the deposits so received passes to the bank or its assignee; and that this being so, such deposits are trust funds and should so be held and made preferred claims, although mixed with other moneys of the bank."

Such is clearly not a result of this statute. If it was,

the effect would be to make two classes of depositors, one class before insolvency and one after, and to apply the deposits of the first class in payment of the deposits of the second.

The act referred to has not changed the legal rights or equities of depositors. It has not made fraudulent what was not fraudulent before. Actual fraud only exists when there is knowledge and intent, but knowledge and intent are not essential elements in the offense defined by this statute. Knowledge of insolvency does not have to be averred in the indictment for receiving deposits when insolvent. Murphy v. People, 19 Ill. App. 125.

It does not therefore have to be proved nor is it receiving deposits *within thirty days* before insolvency that constitutes the offense. The offense is complete within the terms of the statute whenever deposits are received by an insolvent bank. The thirty days limit is a rule of evidence made by the legislature declaring what is *prima facie* evidence of an intent to defraud. The law is stringent and was passed for the protection of all depositors, and not for the benefit of any particular class. It makes bankers liable to prosecution for receiving deposits when insolvent, whether they know of their insolvency or not. If they do not know of their insolvency, there can be no intentional fraud, for intentional fraud can only exist when there is guilty knowledge. But the liability to punishment is the same in either case. It follows, then, that the rights and relations of depositors are not changed because this statute makes it criminal to receive deposits when insolvent.

The date at which Prickett & Son became insolvent does not appear from the evidence, nor is it claimed that the equity of appellant is superior to the equity of any other depositor after insolvency.

Cases are cited by appellant where moneys collected upon claims left within banks for collection were held not to pass to the assignee and were allowed as preferred claims. Such cases are not analogous. The bank held them for collection only. The relation of borrower and lender did not exist. They were not a part of the assets of this bank, and would not as such pass to the assignee. "When a customer makes a deposit in a bank, in the ordinary course of business, of a draft or check received or credited as money and indorsed by the customer to the bank 'for deposit,' to be placed to his credit, the title to the draft or check vests in the bank." American Exchange Bank v. Mining Co., 165 Ill. 113; American Trust and Savings Bank v. Manufacturing Co., 150 Ill. 336.

"When a general deposit is made before formal insolvency, there can be no recovery in preference to other creditors; but when the deposit has been kept separate and not fully received before insolvency, the depositor may claim it." American Exchange Bank v. Mining Co., cited *supra;* Morse on Banking, Secs. 589, 629–631.

If appellant is correct even in claiming that, owing to the insolvency of the bank, the deposit should be considered a trust fund, it could not be so treated and made a preferred claim, as the evidence shows it is incapable of identification.

Trust funds, wrongly converted, may be pursued when the property into which they were converted can be identified, but not when this fails, which is the case when converted into money and mixed with other money. Union National Bank of Chicago v. Goetz, 138 Ill. 127; Mutual Accident Association v. Jacobs, 141 Ill. 268; Bayor v. Am. Trust and Savings Bank, 157 Ill. 68.

The check in this case having been deposited as a

general deposit, and having been collected by J. A. Prickett & Son before their assignment, and its proceeds merged with their other assets so that they can not be followed and identified, appellant's petition under the well settled law of this State must be denied. Judgment affirmed.