### The First National Bank of Hiawatha, Kansas, v. Walsh, Boyle & Company.

#### Gen. No. 12,942.

1. BILL OF LADING—*effect of delivery of, upon title, where question arises upon interplea in attachment.* The title to property is passed to the bank upon a transaction as follows: A bill of lading describing the property, with a draft attached, is delivered to the bank and the bank credits the amount of the draft to the drawer, and when the draft is not paid, does not charge the amount thereof back to such drawer but assumes, itself, the collection of the draft.

Bill of interpleader. Appeal from the Circuit Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1906. Reversed, with finding of fact, and judgment here. Opinion filed February 19, 1907. Rehearing denied February 26, 1907.

Statement by the Court. Appellee, Walsh, Boyle & Co., brought suit against the McGuire Milling Com-

pany of Hiawatha, Kansas, to recover damages for an alleged breach of contract, and sued out an attachment in aid. The attachment was levied upon 923 sacks of flour, seized as the property of the McGuire Milling Company. Subsequently appellant entered its appearance and filed an interplea claiming title to the flour, upon which issue was joined. The issues under the plea were submitted to court, a jury having been waived, and were found in favor of appellee, in whose favor a verdict had already been entered against the defendant in attachment, the McGuire Milling Company, which did not appear.

The material facts are that in October, 1905, the McGuire Milling Company shipped a carload of flour under a contract it seems to have had with Walsh, Boyle & Co. This flour was shipped by the Milling Company to its own order, with directions to notify Walsh, Boyle & Co. In this way the opportunity was afforded the latter to attach the flour upon an alleged cause of action which is not involved in this appeal. The flour was shipped on the 9th of October and the next day the Milling Company drew its sight draft on Walsh, Boyle & Co. to order of the First National Bank of Hiawatha for $702, to which was attached the bill of lading, and these together with certain other items of deposit, amounting in all to $852.22, were deposited at the same time in the usual course of business with appellant, the First National Bank of Hiawatha. The latter on the same day placed the sight draft of $702 and the other items on the deposit slip to the credit of the McGuire Milling Company on the books of the bank, the Milling Company being a regular customer of and depositor with the bank, and the deposit slip itself was marked "Paid." The draft for $702 to which the bill of lading was so attached was indorsed in blank by the McGuire Milling Company by John A. McGuire, manager, when delivered to the bank. The bill of lading, also offered in evidence, was indorsed on its back, "McGuire Mlg. Co., P. J. A.

McGuire, Sec." The draft and bill of lading attached was forwarded to the Chicago National Bank for collection. The draft has not been paid.

The cashier of the bank testified that the $702 placed to the credit of the Milling Company when the deposit was made has not been repaid, and has not been charged back to the account of the Milling Company; that if the bank should lose the case, it would expect to charge the loss to the Milling Company and that in receiving the draft and bill of lading and giving credit to the Milling Company for the amount the bank took into consideration the security which it acquired by the indorsement and delivery of the bill of lading.

The appellant bank claims the carload of flour by virtue of the conveyance evidenced by the indorsed bill of lading; and it filed the interplea in the attachment suit to enforce its title. The replication filed by appellee denied the bank's title to and property right in the flour. From the finding against it the bank prosecutes this appeal.

JOHN W. CREEKMUR, for appellant.

ALDEN, LATHAM & YOUNG, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

The question to be determined is that raised by the interplea, namely, whether the carload of flour seized by appellee under the writ of attachment was at the time of the seizure the property of appellant. If it was, then it was wrongfully attached and the judgment appealed from must be reversed.

The title of the bank rests entirely upon the bill of lading attached to the draft for $702 drawn by the McGuire Milling Company and deposited in the bank by which the draft was credited to the deposit account of the Milling Company. The draft was drawn directly to the order of appellant and was forwarded for col-

lection in the ordinary course of business. The bill of lading which accompanied it described the flour in controversy, bore the indorsement of the Milling Company and was transferred by delivery. In Lewis v. Springville Banking Co., 166 Ill. 311-316, it is said: "The delivery of the three bills of lading or shipping contracts executed by the Union Pacific to the interpleader, operated as symbolic delivery of the sheep to the latter (Taylor v. Turner, 87 Ill. 296 and cases there cited), and the shipper being the owner of the sheep and no opposing interest or claim arising on the part of the carrier, consignee or prior indorsee of the bill of lading, no indorsement of the bill of lading 'to the interpleader was necessary to transfer the title to it," citing cases. It was said in that case that even a sale or pledge of the property without a formal bill of lading by the shipper would operate as a good assignment of the property, and the delivery of an informal or unindorsed bill of lading or other documentary evidence of the shipper's property "would be a good symbolical delivery so as to vest the property in the plaintiffs," citing cases. This being the law there would seem to be no room for question that the delivery of the bill of lading to appellant transferred the flour and vested the title to it in appellant. To the same effect are M. C. R. R. Co. v. Phillips, 60 Ill. 190-198, and Seckel v. York Nat. Bank, 57 Ill. App. 579-582. The burden of proof upon appellant as intervenor to show that it was owner of the property attached was sufficiently met by the proof of such delivery.

It is claimed, however, in behalf of appellee that crediting the account of the Milling Company with the amount of the draft which accompanied the bill of lading did not constitute the bank a holder for value, nothing of value it is said having been parted with by the bank. In support of this contention a number of cases are cited from other jurisdictions, among them Cent. Nat. Bk. v. Valentine, 18 Hun. 417; Drovers' Nat. Bank v. Blue, 110 Mich. 31; Mann v. National Bank,

30 Kans. 412; Alpine Cotton Mills v. Weil Bros., 129
N. C. 452. The last of these cases is similar in some
respects to the case at bar, but in that case when the
draft accompanying the bill of lading was returned to
the bank unpaid, "the credit originally entered was
canceled by charging it back, thus placing the parties
in the position they originally occupied," and it was
said that "Weil Bros. then had a right to demand
and maintain an action against the bank for the bill
of lading and return of its draft." In the case at bar,
however, the parties have treated the deposit of the
draft as a deposit of cash, and the draft has not been
charged back. The bank therefore became and remains
a debtor to the depositor for its amount. Ward v.
Johnson, 95 Ill. 215. In such case, as said in Railway
Co. v. Johnston, 27 Fed. Rep. 243, "it should be held
that the bank acquires title to the paper just as it
would to a deposit of money." To the same effect are
Oddie v. National City Bank, 45 N. Y. 735, and Cragie
v. Hadley, 99 N. Y. 131. In the last case it was said:
"Where a customer of a bank makes a deposit in the
ordinary course of business of drafts or checks which
are received by the bank and credited as money, the
title to the drafts or checks immediately vested in the
bank."

In Lauterman v. Travous, 73 Ill. App. 670-678, refer-
ence is made to the distinction between cases where
checks or drafts are left with a bank only for collec-
tion and where a deposit is made which the depositor
can check against in the ordinary course of business,
since in the former case the ordinary relation of bor-
rower and lender between banker and depositor is
not established, while in the latter case it is. In Trust
& Sav. Bk. v. Manfg. Co., 150 Ill. 336-339, a deposit of
a check was held to vest the legal title thereto in the
bank in the absence of fraud. To the same effect is
what is said in Am. Exch. Bank v. Mining Co., 165 Ill.
103-113: "It is quite true, as announced in authorities
referred to by counsel for appellant, that where a cus-

tomer makes a deposit in a bank in the ordinary course of business of a draft or check received and credited as money and indorsed by the customer to the bank 'for deposit' to be placed to his credit, the title to the draft or check vests in the bank, subject to the right on the part of the bank to charge it back to the depositor in case it is not paid on presentment.''

In Neill et al. v. Rogers Bros. Produce Co. (First Nat. Bk. of Santa Barbara, Intervenor), 23 Southeastern Rep. 702, the facts were similar to those in the case at bar. There attachment proceedings were brought against the Rogers Bros. Produce Company, just as in the case at bar such proceedings are brought against the McGuire Milling Company. In that case, as in this, the intervening bank held a sight draft with a bill of lading properly indorsed, and claimed to own the property covered by the bill of lading in good faith and for a valuable consideration. It was held (p. 710) that the bank ''was the holder for value of the bill of lading and was entitled to the goods until the draft accompanying said bill was paid,'' and that the goods were not subject to attachment or to sale thereunder as the property of the Produce Company. To the same effect is Hass v. The Old National Bank, 91 Ga. 312. Appellee's attorneys cite Warman v. First Nat. Bank, 185 Ill. 60, in support of their contention. It is said that ''by a general deposit in bank the relation of debtor and creditor merely is created between the bank and the depositor,'' and that if defenses set up by the maker prevailed against notes discounted by a bank the proceeds of which had been deposited to the credit of one not indebted to it, the bank can protect itself by refusing to pay the deposit or if it had paid any part would be entitled to protection *pro tanto,* and could not claim the protection of being an innocent holder for value. There, however, the question involved was whether by such credit upon its books the bank became a *bona fide* holder so as to be pro-

tected against "infirmities in the paper" so discounted—a very different proposition from any involved in the case at bar. It was held that the introduction of the discounted notes was sufficient *prima facie* proof that the bank acquired them *bona fide* for value in the usual course of business before maturity and without notice of any fact or circumstance impeaching their validity, and that it was the owner of them and entitled to recover the full amount against the makers; and that nothing short of fraud would overcome that evidence or invalidate the bank's title thus shown. In the case before us no such question arises, and in any event there is no evidence to dispute the title of the bank to the draft. It is clear in the case at bar that the credit given by appellant was not merely provisional. The draft was accepted as a deposit in the usual course of business against which the depositor was at liberty to draw as so much cash. Even if the bank might have been willing to give the Milling Company such credit without the security of the bill of lading, trusting to the latter's financial responsibility, it did not do so, and the evidence shows that it was in the habit of being protected on such drafts drawn on flour shipped by the Milling Company by receiving the bill of lading with the drafts which it accepted and credited as cash deposits.

We deem it unnecessary to extend the discussion or to review in detail the holding of the court upon propositions of law. It follows from the views we have expressed that the judgment of the Circuit Court must be deemed erroneous. It will, therefore, be reversed and judgment entered here in favor of the appellant on the interplea, with a finding of fact.

*Reversed, with finding of fact.*