## Andrew Helgesen, Appellee, v. Chicago Suburban Water & Light Company, Appellant.

### Gen. No. 15,029.

1. PLEADING—*when declaration sufficient after verdict.* **Held,** that the declaration in an action for injuries sustained by reason of the plaintiff becoming the connection .between two disconnected ends of an electric wire defectively stated a good cause of action and that the same was sufficient after verdict.

2. EVIDENCE—*what essential to admissibility of written statement employed for purposes of impeachment.* Such a statement to be admissible must be genuine and in the same condition in which it was at the time the witness sought to be impeached made it and the burden of showing such genuineness and unchanged condition is upon the party offering it.

3. EVIDENCE—*impeachment by means of previous self-contradictory statements.* In impeachment of any statement of fact, material to the issue, made by a witness or party while testifying, a previously made verbal or written inconsistent or conflicting statement may be introduced in evidence not, however, unless, while testifying, the wit-

542 APPELLATE COURTS OF ILLINOIS.

Helgesen v. Chicago Suburban W. & L. Co., 156 Ill. App. 541.

ness' or party's attention has been called to such previous statement with specification of time and place when made (or it be shown, if written) in order that circumstances under which it was made be known, that opportunity be given for full explanation and that it may be ascertained whether the previous statement is, in reality, inconsistent and impeaching so that it should be permitted to discredit the testimony given.

4. EVIDENCE—*questions of fact involved in admissibilty of evidence are for the court.* The question of admissibility of impeaching evidence is one solely for the court, although in that connection he may be required to determine upon the same questions of fact which may be in issue in the case.

5. TRIAL—*when jury should be required to retire.* If it is sought to use a written statement for purposes of impeachment and its genuineness is in question and it is of an important and material character the evidence with respect to its competency should be heard out of the presence of the jury.

6. TRIAL—*when conduct of counsel ground for reversal.* If an attorney undertakes to anticipate the ruling by the court with respect to the competency of a written statement sought to be used for purposes of impeachment and states in the presence of the jury the effect of such written statement, his conduct is prejudicial and the paper in question being incompetent, such conduct becomes ground for reversal.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed and remanded. Opinion filed July 15, 1910.

GIRARD A. ELLINGSON, for appellant.

JOHN F. WATERS and JOEL BAKER, for appellee.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

This is a personal injury suit wherein plaintiff claims that he was injured by reason of negligence attributable to defendant, while in defendant's employ as an electrical lineman. Plaintiff sustained the injury, of which he complains, through becoming the connection between the two disconnected ends of a wire carrying 1,100 volts of electricity, while he was at work upon the cross-arm of an electric wire

pole.  He recovered a judgment for $3,500 in a jury trial and from that judgment defendant prosecutes this appeal.

The declaration contains an original count, which was filed August 23, 1906, and three additional counts which were filed January 31, 1908.

The original count sets up that by order and direction of the defendant plaintiff ascended a certain pole to "string and transfer" a certain wire provided by the defendant and that the wire was heavily charged with electricity and was "exposed at parts and improperly, inadequately, insufficiently and unsafely insulated," which facts were not known to the plaintiff but which defendant did know or by the exercise of ordinary care should have known; that the defendant did not "warn and instruct" plaintiff of the dangerous condition of the wire and, that, while upon the pole and in the exercise of proper care, plaintiff, by reason of the premises, came in contact with the wire, and received an electric shock whereby he was injured.  In the evidence it appears, and it was admitted at the trial, that, when plaintiff ascended the pole, he was fully aware of the fact that the wire from which he received the shock was charged with electricity.  It is also clear from the evidence that plaintiff observed and was aware of the condition of the wire and of the insulation thereof before receiving any shock and that, as to the insulation and physical condition of the wire, he had a better and earlier opportunity of observation than anyone else. Plaintiff failed totally in proving the cause of action set up in this count.

The first additional count sets up that, by order and direction of the defendant, plaintiff ascended a pole to "string and transfer" a wire, provided by defendant, from that pole to another, with averments similar to those in the original count as to the wire being charged and exposed and not properly insulated and as to the lack of knowledge on the part of plaintiff and defendant's knowledge or chargeability with knowledge.  This count also sets up that, while plaintiff was upon the pole exercising due care, defendant "failed to furnish plaintiff a safe place to do said work;"

544    APPELLATE COURTS OF ILLINOIS.

Helgesen v. Chicago Suburban W. & L. Co., 156 Ill. App. 541.

and that by the conduct of defendant in that behalf "plain-tiff unavoidably came in contact with certain of said wires and as an immediate consequence" sustained an electric shock and was thereby injured. No element of unsafety in the place provided is set up except the condition of the wire and, if this count states a cause of action, which we need not now determine, plaintiff failed in establishing the cause of action set up for the same reason that he failed in respect to the original count.

The second additional count sets up that plaintiff was in the employ of defendant and that defendant ordered and directed him to ascend a certain pole and to transfer and string a certain wire attached to that pole upon another pole, with averments similar to those in the original count as to the wire being charged and exposed and not properly insulated and as to the lack of knowledge on the part of plaintiff and defendant's knowledge or chargeability with knowledge. It also sets up that, while plaintiff was exercising ordinary care for his own safety and was in the act of stringing and transferring the aforesaid wire, a vice principal of defendant, who was upon another pole and who was assisting in and superintending plaintiff's work, "caused plaintiff, while holding and working with said dangerous and uninsulated wire, * * to come in contact with another wire, which act * * completed an electrical circuit through plaintiff's body," whereby plaintiff sustained an electric shock and was thereby injured.

It is conceivable that plaintiff may have been "caused" "to come in contact with another wire" by a vice-principal of defendant, as set up in this count, without any negligence whatever on the part of anyone or without there being any negligence attributable to defendant in that connection, and we are not prepared to say that this count presents a state of facts showing that the injury to plaintiff was caused by negligence attributable to the defendant, so as to make the count sufficient against a demurrer, yet, at this stage of the case, after verdict, this count may be regarded as defectively stating a good cause of action and, therefore, as sufficient

when aided by the legal inferences and intendments which follow a verdict. We will so regard it.

Plaintiff's evidence tends to prove a state of facts creating a cause of action under this second additional count, when regarded as last stated. The defendant's evidence tends to prove an entirely different state of facts and one that is totally inconsistent with any right of recovery by the plaintiff. Plaintiff's evidence is not so full and clear in detail and circumstance as to satisfactorily establish negligence in the acts charged under the second count and to preclude the idea of contributory negligence on plaintiff's part. However, as the crucial details and circumstances may be more fully developed upon another trial and the case may then have a different aspect, we prefer not to place our disposal thereof upon a lack of evidence on the part of the plaintiff. There is another ground upon which we are obliged to reverse the judgment in this case.

According to the evidence, Heinze, defendant's foreman of the construction crew engaged in the work, was in a position to see and observe more clearly and fully than anyone else what happened when plaintiff was injured. Heinze was defendant's principal witness in the trial. It was of vital importance to the due administration of justice in this case and to the accordance of a fair trial to the defendant that nothing should occur in the proceedings which would have a tendency to erroneously and unjustly discredit Heinze. Under these circumstances, any occurrence of that character in the procedure during the trial, occasioned by the conduct of plaintiff's attorney, would, of course, vitiate the verdict subsequently returned, if in favor of the plaintiff. Plaintiff's attorney undertook to impeach Heinze's testimony and credibility by evidence of a previous unsworn contrary statement made by him out of court. In the admission of this previous statement, under the circumstances under which it was admitted, plaintiff's attorney led the court into reversible error. The previous statement, by which it was sought to impeach, was typewritten. It was essential to its admissibility that it be genuine and that it be in the same

546    APPELLATE COURTS OF ILLINOIS.

Helgesen v. Chicago Suburban W. & L. Co., 156 Ill. App. 541.

condition when offered in evidence as when Heinze made it. Had it been corrupted while in the possession of plaintiff or his attorneys, it was inadmissible when offered on plaintiff's behalf.

During cross-examination of Heinze, on March 12, 1908, plaintiff's attorney, Waters, first brought up the subject of the typewritten statement. He asked the witness whether, on October 11, 1907, he had had a conversation with Joel Baker, one of the plaintiff's attorneys, at the corner of certain streets, if what the witness then said was not taken in shorthand by Baker, and if it was not afterwards typewritten. To these questions and also to the question whether the signature to the paper, which counsel apparently held in his hand, was the witness' signature, the witness replied affirmatively. The examining attorney then asked: "Q. You saw that paper and examined it and made those erasures in my office last week, didn't you, and did you see those lines that are smudged out?" To this the witness answered: "A. Well, there was some erasures made, yes." Thereupon the following questions were asked and answers made: "Q. And you read this over carefully, didn't you, before you signed it? A. Yes. Q. That is true, isn't it? A. Well, if this is the same statement, yes. Q. Yes.—Isn't that your signature? A. Yes, but I don't know about this. Q. Didn't you see me write out the 'crew' and the other words? Didn't you see me write them? A. Yes. Q. There is no question about that being the paper, is there? A. No sir." This was all that occurred relating to the statement at that time. What was referred to as "those erasures" and as the lines "smudged out" and whether the statement was upon one or several pieces of paper does not appear in this record.

Later in the trial, after defendant had rested, the plaintiff's attorney, Waters, said: "If the court please, the plaintiff wishes to introduce in rebuttal, now, the statement of Heinze identified this morning." Clearly, Waters had failed to lay a sufficient foundation for the statement's admissibility in respect to its altered condition. It appears that there were erasures and alterations in the paper offered in evidence. Its

integrity was further impeached by the defense after the court had permitted it to be introduced in evidence. The burden of a satisfactory explanation of its condition rested upon the plaintiff, who offered the paper in evidence and who, by himself or his attorneys, had the possession thereof. Upon objection to its admission by defendant's attorney, Mr. Waters replied: "It contradicts flatly what he [the witness] stated here this morning on the stand. Your honor will remember that he admitted this morning on the stand that he made the erasures himself and signed it and dated it last Friday in my office." The court overruled the objection of the defense by saying: "The first page of it, except the last two lines, may be received. The last two lines and what follows on the second page will not be received." To this ruling the defendant's attorney excepted. Plaintiff's attorney then read that part, apparently, which the court permitted to be introduced in evidence and rested his case in rebuttal.

Thereupon, after the admission of the paper in evidence, Heinze was called as a witness in surrebuttal by the defendant. Upon his direct examination in surrebuttal Heinze, having testified that at Waters' request he had gone to his office and there signed the typewritten statement, was interrogated, and he answered, among other things, as follows:

"Q. Was the statement then [when signed] in the same condition—was the statement then as written up as you had given it to Mr. Baker? A. Well, there were a few things we changed.

Q. Tell what was changed there what was wrong at that time? A. Well, there was a few remarks in there that I was supposed to make that I had not said.

Q. What were they? A. For instance, for the first one, it says, 'he and Helgesen were transferring the wires from the old to a new pole,' and I said the 'crew' was transferring the wire from the old to a new pole.

Q. What else was not as you remember stating it to Mr. Baker? A. This ain't the statement I signed.

Q. Well, look at it carefully. A. This here is not what I signed, though.

Q. Look at the second page—did you sign that? A. Yes.

548    APPELLATE COURTS OF ILLINOIS.

Helgesen v. Chicago Suburban W. & L. Co., 156 Ill. App. 541.

Q. How did—how do you know you did not sign the first page? A. Well, it says things here that had not been in the first statement at all.

Q. Was it fastened together when you signed it? A. There was a pin in here, if I ain't mistaken.

MR. WATERS: Q. Is there any pin-hole there now? A. No, there isn't; there wasn't—it was just fastened in the corner like, it was not like this, I don't think.

MR. KALES: Q. What is there in that statement that was not in it, in the statement that you signed, and the statement, that you gave to Mr. Baker? A. It says, 'He sent Helgesen up to untie the wire from the old pole, and Helgesen found it was not tied in the usual way, and called him up to look at the job.' It was not said that way in my statement.

Q. Was it stated that way in the statement which was handed to you to sign? A. No, it was not, it didn't say that at all.

Q. Did you alter the statement which you signed the other day in any way? * * * A. I did not; I said I told Mr. Waters to change this, the few things that were not right.

Q. Did you change them yourself? A. No.

Q. What did he say about doing it? A. He done it while I was there.

Q. You saw him do it? A. Yes.

Q. In his own hand. A. Yes.

Q. Did the first sheet look like that? A. It looked something like it, yes.

Q. Is there anything else in that first page that was not according to your statement to Mr. Baker, or according to the paper which you signed? A. It says, 'he went up on the new pole and Helgesen handed him the wire to show that it was not cut, he looked at it and threw it back to Helgesen and told Helgesen to take it; he then hollered 'Andy, let loose,' and when he saw he had got the current, called to Charlie on the next pole to cut the wire.' That was not in my statement.

Q. Did you ever give that statement to Mr. Baker? A. No.

Q. Did you ever sign a paper with it in? A. No, sir.

Q. Did you say anything—do you see anything else in

that statement that was not in the paper that you signed, or in the statement that you gave to Mr. Baker on the first page only? A. That is all there is in there."

In the cross-examination of Heinze upon surrebuttal the following questions, besides others, were asked and the following answers received by Mr. Waters:

"Q. Do you remember having me write the word 'crew' in there? A. Yes, sir.

Q. I had a leaf—it is a roll-top desk, and I pulled the leaf out, and you sat right there close to me, as I am to you now, and you read it over? A. Yes, sir.

Q. And you told me to strike out the lines down here, didn't you? A. Yes, sir.

Q. This is in ink, and this is with the pencil; you remember that, don't you? A. Yes, sir.

Q. And yet you say that is not your statement? A. No, not those words."

No other evidence was adduced by either party touching the physical condition, making or signing of the statement introduced to impeach the testimony and credibility of Heinze.

A witness may be impeached by proof of verbal statements upon material points made by him out of court, which are contradictory of his testimony on the trial. Such verbal statements are not, however, admissible in impeachment unless the witness' attention was called to the same upon his examination, with a specification of the time and place when and where such previous statements, which it is purposed to offer in impeachment, were made. Quincy Horse Ry. Co. v. Gnuse, 137 Ill. 264. It is required thus to call the witness' attention to the proposed impeachment in order that there may be an opportunity, on behalf of the witness and on behalf of the party calling the witness, to obtain a full explanation of the circumstances surrounding the making of such previous statement, if any were made, that it may be ascertained whether the previous statement is, in reality, a statement inconsistent with and in contradiction of the witness' testimony, and that the impossibility of any such previous

550    APPELLATE COURTS OF ILLINOIS.

Helgesen v. Chicago Suburban W. & L. Co., 156 Ill. App. 541.

statement having been made, if such be the case, may be shown before the previous statement is admitted in evidence.

"The rule is, that the contradictory declarations of a witness, whether oral or in writing, made at another time, cannot be used for the purpose of impeachment until the witness has been examined upon the subject, and his attention particularly directed to the circumstances in such way as to give him full opportunity for explanation, or exculpation, if he desires to make it. If the contradictory declaration is in writing, questions as to its contents, without the production of the instrument itself, are ordinarily inadmissible, and a cross-examination for the purpose of laying the foundation for its use as impeachment would not, except under special circumstances, be allowed until the paper was produced and shown to the witness while under examination.   *   *   * All the law requires is, that the memory of the witness shall be so refreshed by the necessary inquiries as to enable him to explain, if he can and desires to do so. Whether this has been done is for the court to determine before the impeaching evidence is admitted." The Charles Morgan, 115 U. S. 69, 77.

Before the admission in evidence of the paper containing the previous statement, all the evidence adduced by either party touching its making, its integrity and its admissibility should have been heard, and, in this instance, it should have been heard out of the presence of the jury. It is for the trial judge, solely, to pass upon the admissibility of evidence and during an investigation as to the admissibility of a previous statement, such as that here involved, much may be said by the attorneys and heard by the jurors which may unjustly affect the interests of one party or the other injuriously.

"It is the exclusive province and duty of the court to decide upon the admissibility of evidence, and it is none the less so where, in order to make such determination, the court is obliged to examine and pass upon questions of fact. In all cases, whether civil or criminal, where objection is made to the competency of evidence offered, and the question depends

upon facts which may be proved or disproved, it is the duty of the judge to hear all proper evidence offered on either side, touching the question of competency, before letting the challenged evidence go to the jury; and it is error to do otherwise." And it makes no difference that the fact, which the judge is thus called upon to decide, may be identical with the issue on which the opinion of the jury will be ultimately taken. 1 Thompson on Trials, Secs. 318, 319. "It is the office of the judge to pass upon the admissibility of evidence, and he cannot devolve it upon the jury, whose duty it is to consider its sufficiency. (p. 685) * * * The reference of the preliminary question and the consideration of the merits to the jury at the same time would perplex and embarrass their inquiries—greatly increase the probability of their being misled—and, unless the jury was one of more than ordinary discrimination, they would hardly be competent to the task of considering the facts in their different phases, applying them, and understandingly respond to the issue (p. 687)." Degraffenreid v. Thomas, 14 Ala. 681. "Although it is the privilege and prerogative of the jury to determine all matters of fact which are involved in the issue submitted to them, yet it is equally the exclusive duty of the court to determine all matters of law, even if they involve the necessity of deciding upon the truth of facts. Thus, it is the duty of the court to determine all matters of fact which go to show that offered evidence is either admissible or not. * * * If a deposition be objected to, as having been fraudulently or otherwise illegally taken, the court, and not the jury, is to inquire into the facts upon which the objection is founded. And so in the case at bar, it was for the court to have decided the fact which was submitted to the jury, that it might determine whether the declaration of Robinson was admissible evidence. If, upon such examination of facts by the court, it decides to admit evidence, it is for the jury to consider, weigh and apply it; but if it be rejected, the jury has no legal right even to know that it was ever offered." Robinson v. Ferry, 11 Conn. 460, 463. To

the same effect Bartlett v. Smith, 11 Mees & W. 483, and Jenkins v. Davies, 10 Adolph & Ellis, 314.

While the objection of defendant's attorney to the admission of the paper containing the previous statement was pending, plaintiff's attorney, in the presence of the jury, boldly asserts, relative to Heinze's statement, that "It contradicts flatly what he [the witness] stated here this morning on the stand." This statement by plaintiff's attorney in the presence of the jury as to the contents of a paper, the admissibility of which was under consideration by the court, was highly unprofessional and for the attorney to then state his conclusion as to the contents of the paper was prejudicial to the defense and, the paper not being admissible in evidence, reversible error. This conduct, by an attorney of the intelligence and ability of plaintiff's counsel, appears like a deliberate invitation of error. It is most viciously unfair to the adverse party and disrespectful to the trial judge thus to anticipate a ruling, by announcing to the jury the contents of the writing, the admissibility of which is under consideration. The idea was conveyed to the jurors that the writing contradicted "flatly" the testimony of the witness. Under the circumstances the learned trial judge, considering the admissibility of the paper, was not in a position to contradict the attorney, and even though the paper had been excluded, the interests of the defense would have been unjustly prejudiced.

Moreover, a serious error intervened in the admission of the paper in evidence upon the insufficient foundation laid for its admissibility. Heinze was the only witness by whom it was sought to build a foundation for its admissibility. Not only does his testimony, considered all together, fail to establish its genuineness as a statement made by him, but that testimony discredits the genuineness of the statement and leaves in the mind a strong impression that the statement offered and received in evidence is a falsification of some statement Heinze did make.

When the previous statement involved is in writing or is typewritten and signed, the necessity for a foundation upon

which its admissibility may be placed still remains. The impeaching evidence not being verbal but written, the required foundation is consequently necessarily somewhat changed in its character. The genuineness of the written statement must be established, before it can be admitted in evidence. Proof of the handwriting of the signature is but one step in that direction. If any changes, alterations or interlineations appear, the party offering the paper must show that these were made prior to the signing of the paper or with the consent of the witness, before the statement is admissible in evidence. It is the duty of the party, proposing to impeach the witness by the introduction of such previous statement, to call the witness' attention to that statement so that in proper season there may be an opportunity for explanation, if any there be, of the inconsistency. Boeker v. Hess, 34 Ill. App. 332, 336; Travelers Preferred Accident Assn. v. McKinney, 57 Ill. App. 141, 142; Seckel v. York Nat'l Bank, 57 Ill. App. 579, 583; Gaffney v. People, 50 N. Y. 416, 423. "A written statement or deposition is as susceptible of explanation as verbal statements." Conrad v. Griffey, 16 How. (U. S.) 23, 47.

"A witness is not bound to answer as to matters reduced to writing by himself or another, and subscribed by him, until after the writing has been produced and read or shown him." Newcomb v. Griswold, 24 N. Y. 298, 301; Bellinger v. People, 8 Wend. 595, 598. The whole writing must be read in evidence. The Queen's Case, 2 Bros. & B. 286; C. E. L. 148.

For the errors indicated relative to the impeaching statement the judgment of the trial court must be reversed and the case must be remanded for another trial.

The third additional count is a mere collection or compilation of the statements presented as the several causes of action in the other counts of the declaration. Nothing new, of substance, is added.

The imperfections in the abstract of the record herein are such that we have often been obliged to go to the record. For instance, the omission from the abstract of the word "yet"

on page 222 of the record and the changing of the words "had reached" on page 229 in the record into "was" in the abstract, materially changes the sense of what the witness said, in both instances. Obviously these alterations were unintentional, for in both instaces the alteration makes against appellant. The preparation of the abstract is lawyer's work; it is not clerical work. Furthermore, we find that the Heinze statement which was offered in evidence nowhere appears as a whole—neither in the abstract nor in the record. The record and the abstract should have shown it in its entirety. It should have been made to appear in the condition it was when offered, that is, the record and the abstract should have shown both that part thereof which was received in evidence and that part which was rejected. The labor of this court is very much increased by poor and defective abstracts and records, and the determination of cases is correspondingly delayed.

*Reversed and remanded.*